STATE OF NEBRASKA, EX REL. GEORGE HOCKNELL, v. GEORGE W. ROPER ET AL.

FILED JANUARY 16, 1895.*   No. 7387.

1. **Relocation of County Seat:** CONSTRUCTION OF STATUTE. Section 1, article 3, chapter 17, Compiled Statutes, 1893, construed, and *held*, (1) that within the meaning of this statute a county seat shall not be relocated in any place unless three-fifths of all the electors of the county shall express their will to that effect by their votes at an election held for that purpose ; (2) that the law presumes when such an election is held all the electors of the county vote at such election.

2. ———: ELECTIONS: MANDAMUS. In a *mandamus* proceeding to compel the officers of Red Willow county to remove their offices to, and perform the duties of their office at, the city of McCook the application alleged: "That on the 1st of August, 1892, a special election was held in said county for the relocation of the county seat thereof; that the county seat at that time and for more than five years prior thereto had been located at the city of Indianola; that neither previous to nor since said date had any election been held in said county for the relocation of the county seat thereof; that the canvass of the votes cast at such election showed the following results: Votes in favor of Indianola, 867; votes in favor of McCook, 1,339; rejected ballots, 1; blank ballots, 3; ballots written for McCook and not counted, 2; ballots not accounted for, 25; total number of names of electors on poll-books, 2,237." *Held*, (1) That the twenty-five ballots "not accounted for" constituted a part of the "vote cast" at

* Publication withheld pending rehearing.   See 46 Neb., 730.

the election, within the meaning of the statute; (2) that the law presumes that every elector whose name appears upon the poll-books was present and voted at the election; (3) that in order for the result of the election to locate the county seat at McCook three-fifths of 2,237 votes must have been cast in favor of that city; (4) that as the application failed to show such fact it did not state a cause of action.

3. **Elections:** RESULT. *State v. Bechel,* 22 Neb., 158, reaffirmed.

ORIGINAL application for *mandamus* to compel the county officers of Red Willow county to remove their offices from Indianola to McCook. *Writ denied.*

*Marquett, Deweese & Hall, A. J. Rittenhouse,* and *W. S. Morlan,* for relator.

*S. R. Smith, W. R. Starr, H. W. Keyes, Reese & Gilkeson,* and *Sidney Dodge, contra.*

RAGAN, C.

This is an application for a peremptory writ of *mandamus* to compel the respondents, who are officers of Red Willow county, to forthwith remove their offices from the city of Indianola to the city of McCook, in said county, and to hold their offices and perform their respective duties as such officers at said city of McCook. It is alleged in the petition or application that on the 1st of August, 1892, a special election was held in said county for the relocation of the county seat thereof; that the only places voted for at said election were the city of McCook and the city of Indianola; that the county seat of Red Willow county was at the time of holding said election, and for more than five years prior to that time had been, located in the city of Indianola; and that neither previous to nor since August 1, 1892, had any election been held in said Red Willow county for the relocation of the county seat thereof. The application further alleges that at said special election there were cast for the relocation of the county seat of said

·county 1,341 votes in favor of relocating the county seat
at the city of McCook, and 867 votes in favor of relocat·
ing said county seat at said city of Indianola. The appli-
cation further alleges: "At said election more than three-
fifths of all the votes cast were for the relocation of the
county seat of said county at said city of McCook. On
the 4th and 5th days of August, 1892, said votes were
duly canvassed. A true copy of the canvass of said votes·
which was duly published or declared and the return of
the canvassing board of the votes cast at said election is as
follows: For the relocation of the county seat—At In-
dianola, 867 votes; at McCook, 1,339 votes; ballots not
reported or accounted for, 25; ballots rejected, 1; blank
ballots, 3; ballots written for McCook and not counted, 2;
total vote, 2,237."

Does this petition or application state facts sufficient to
constitute a cause of action? It will be observed from the
quotations made above from the application that at the
special election for the purpose of relocating the county
seat there were cast at said election 2,237 votes. Section
1, article 3, chapter 17, Compiled Statutes, 1893, provides
that where an election is held for the purpose of relocating
the county seat of a county, "Any place receiving three-
fifths of all the votes cast shall become and remain    *    *
the county seat of said county." The theory of the relator
seems to be that as Indianola and McCook together re-
·ceived 2,206 votes, and that more than three-fifths of these
were cast in favor of McCook, therefore the result of the
·election was to relocate the county seat at the latter city.
Is this the correct construction of the statute just quoted;
or, does the statute mean that the county seat shall be ·de-
clared relocated at that place which receives three-fifths of
all the votes cast at the election held for the purpose of re-
locating the county seat?

Section 5, article 10, of the constitution provides: "The
legislature shall provide by general law for township or-

ganization, under which any county may organize whenever a majority of the legal voters of such county voting at any general election shall so determine." A proposition to adopt township organization was submitted to the voters of Lancaster county at the November, 1877, election. At the election held at that time there were cast 2,451 votes; 952 were cast in favor of, and 601 votes were cast against, the proposition. The county commissioners refused to complete township organization as provided by the law, and application was made to this court for a peremptory writ of *mandamus* to compel the county commissioners of Lancaster county to complete township organization in said county by dividing the county into towns and appointing town officers, etc.; and this court, construing the constitutional provision quoted above, held that in order to adopt township organization a majority of all the legal voters of the county voting at the election must be recorded in favor of township organization. (See *State v. County Commissioners of Lancaster County*, 6 Neb., 474.)

Section 2 of article 11 of the constitution of the state, entitled "Miscellaneous Corporations," provides: "No such general law shall be passed by the legislature granting the right to construct and operate a street railroad within any city, town or incorporated village without first requiring the consent of a majority of the electors thereof." Section 4, article 7, chapter 72, Compiled Statutes, provides that the question of the consent of a majority of the electors of any municipality to the construction and operation of a street railroad in its limits should be determined by submitting the question to the electors of such municipality; and by section 5 of said article it was also provided that such election should be held in the same manner and at the same places as the general city elections, and the returns should be canvassed by the council of said city and the result declared; "and if a majority of the votes cast at such election shall be in favor of the constructing

and operating such proposed street railroad, the council shall cause the city clerk to make out a certificate of the result, stating that the consent of a majority of the electors of such city has been given to the constructing and operating of such railroad." (Session Laws, 1877, p. 136, sec. 5.)   The Omaha & South Omaha Street Railroad Company applied to the electors of the city of Omaha for consent to construct and operate a street railroad in the streets of said city.   The question as to whether the electors of said city would consent to such request of the street railroad company was submitted to and voted upon by the electors of said city at the general election held therein on the 3d of May, 1887.   There were 8,146 votes cast at such general election.   On the question of consent to the street railroad company to build and operate its road in the streets there were cast 1,650 votes, of which 1,470 were in the affirmative and 180 in the negative.   The result of the election having been certified to the city council, that body refused to cause the clerk of the city to certify to the street railroad company the necessary consent for it to operate and build its street railway in the streets thereof, but on the contrary declared that the consent of the electors of the city that the street railroad company might build and operate its road had not been given. The street railroad company then made application to this court for a peremptory writ of *mandamus* to compel the city council and city clerk of the city of Omaha to make out a certificate of the result of the election, stating that the consent of the majority of the electors of said city had been given to the street railroad company to construct and operate its street railway in the streets of said city; and this court, construing said section 5 quoted above, held that as the majority of all the votes cast at the election, or more than one-half of 8,146 votes, were not cast in favor of the street railway company, the result of the election did not confer the consent of the electors of the city of Omaha upon the street railway company to construct and operate its

State v. Roper.

road in the streets of said city. (See *State v. Bechel*, 22 Neb., 158.)  This case is decisive of the question at bar.  Here the application shows that at the election held for the purpose of relocating the county seat of Red Willow county there were cast at such election 2,237 votes, and in order for the result of this election to relocate the county seat at McCook three-fifths of all the votes cast at the election, or three-fifths of 2,237 votes, must have been cast in favor of McCook.  The meaning of the law is that a county seat of a county shall not be relocated at any place unless three-fifths of all the electors of the county shall express their will to that effect by their votes at an election held for that purpose; and the law presumes that when such an election is held that all the electors of the county vote at such election.  The votes cast for Indianola and for McCook, the three blank ballots cast, the one ballot rejected, and the two ballots written for McCook and not counted do not constitute the entire vote cast.  There were on the poll-books of the various voting places recorded as voting the names of 2,237 electors.  The votes of all these electors are accounted for except twenty-five; but as the twenty-five electors registered as voting, we must presume they voted either blank ballots or for some place other than either McCook or Indianola.  Those ballots, though unaccounted for, constitute a part of the whole vote cast, within the meaning of the statute; in other words, a name registered on the poll-book is a vote cast.  The law requires the clerks of an election to enter on the poll-books the name of each elector at the time he votes.  We cannot presume that the clerks of this election entered upon the poll-books the names of twenty-five electors who in fact were not present and did not vote.  On the contrary, we must presume that every elector whose name appears upon the poll-books was present and voted at the election. (*Slingerland v. Norton*, 61 N. W. Rep. [Minn.], 322.)  The writ is denied and the application dismissed.

WRIT DENIED.