STATE OF NEBRASKA, EX REL. GEORGE HOCKNELL, V. GEORGE W. ROPER ET AL.

FILED JANUARY 9, 1896. NO. 7387.

1. **Relocation of County Seat:** ELECTIONS: FRAUD: MAN-DAMUS. On an application for a *mandamus* to compel the removal of a county seat in pursuance of the declared result of a canvass of the vote on the question of relocation, the court cannot go behind the returns and investigate issues of fraud and illegality in the manner of conducting the election.

2. ——: ——: ——: PLEADING. An answer in such a case tendering such issues presents no defense.

3. ——: ——: MANDAMUS. In an appropriate case the court will by *mandamus* enforce the *prima facie* right established by the canvass, but it will not determine the ultimate right.

REHEARING of original application for *mandamus* to compel the county officers of Red Willow county to remove their offices from Indianola to McCook. For former opinion, see 46 Neb., 724. Heard on motion of relator to strike out portions of the answers. The issues are stated by the commissioner. *Motion sustained.*

*J. W. Deweese, A. J. Rittenhouse,* and *W. S. Morlan,* for relator:

The material matters set forth in the answers which the relator has moved to strike out involve the decision of a political question, and may not be tried in a court upon which jurisdiction has not been conferred by the legislature. (*Wright v. Fawcett,* 42 Tex., 203; *Parmeter v. Bourne,* 35 Pac. Rep. [Wash.], 586; *State v. Dortch,* 41 La. Ann., 846; *State v. Police Jury,* 43 La. Ann., 1009; *Reynolds & Henry Construction Co. v. Police Jury,* 44 La. Ann., 863; *Dickey v. Reed,* 78 Ill., 261.)

State v. Roper.

The supreme court has no original jurisdiction in election cases. (*Miller v. Wheeler* and *Crawford v. Norris*, 33 Neb., 765; *Bell v. Templin*, 26 Neb., 249; *Scott v. McGuire*, 15 Neb., 305.)

An election cannot be contested in a *mandamus* proceeding, and in such a case the court will not go behind the returns and inquire into the legality of the votes cast. (*Cameron v. Parker*, 38 Pac. Rep. [Okla.], 14; *State v. Dodson*, 21 Neb., 218; *State v. Jaynes*, 19 Neb., 161; *Houston v. Steele*, 28 S. W. Rep. [Ky.], 662; *State v. Nemaha County*, 10 Neb., 32; *State v. Powell*, 10 Neb., 48; *McGee v. State*, 32 Neb., 149; *State v. Palmer*, 10 Neb., 203; *Anderson v. Colson*, 1 Neb., 172; *State v. Plambeck*, 36 Neb., 404; *Hagge v. State*, 10 Neb., 51; *State v. Stearns*, 11 Neb., 106; *State v. Peacock*, 15 Neb., 442; *State v. Wilson*, 24 Neb., 139; *State v. Elder*, 31 Neb., 169.)

The intervenors had another adequate remedy at law, and therefore cannot try in this action the material matters moved to be stricken out of their answers, in *mandamus* proceedings. (*Anderson v. Colson*, 1 Neb., 172; *State v. McCrillus*, 4 Kan., 250; *Eyke v. Lange*, 63 N. W. Rep. [Mich.], 535; *Ex parte Heath*, 3 Hill [N. Y.], 42; *Commissioners of Yorktown v. People*, 66 Ill., 339; *Excelsior Mutual Aid Association v. Riddle*, 91 Ind., 84.)

The district court had original jurisdiction to try the contest of the county seat election. (*Scott v. McGuire*, 15 Neb., 305; *Burke v. Perry*, 26 Neb., 414; *Ayers v. Moan*, 34 Neb., 210; *Crews v. Coffman*, 36 Neb., 824; *Gibson v. Trinity County*, 22 Pac. Rep. [Cal.], 225; *Albert v. Twohig*, 35 Neb., 568; *Biggs v. McBride*, 21 Pac. Rep. [Ore.], 878; *Packard v. Richardson*, 17 Mass., 143; *Curtis v. Leavitt*, 15 N. Y., 217; *People v. Fitch*, 1 Cal., 523.)

Where the statute prescribes a specific and adequate remedy, this must be pursued to the exclusion of all other remedies. (*State v. Stewart*, 26 O. St., 216.)

*S. R. Smith, W. R. Starr, H. W. Keyes,* and *Reese & Gil-keson, contra:*

In answering to the merits the relator waived his right to be heard upon the motion. (Code of Civil Procedure, sec. 92; *Bell v. Sherer,* 12 Neb., 411; *Moore v. Glover,* 16 N. E. Rep. [Ind.], 163; *Ludlow v. Ludlow,* 9 N. E. Rep. [Ind.], 769.)

Statutes providing for contests of election, unless clearly exclusive, are only cumulative remedies. (High, Extraordinary Remedies, sec. 624; McCrary, Elections, sec. 334.)

Before a writ of *mandamus* will issue the court has a right to inquire into every fact necessary to determine whether or not the relator is entitled to the relief prayed for, and to that end may go behind the certificate and returns. (*State v. Barber,* 32 Pac. Rep. [Wyo.], 14; *People v. Rice,* 129 N. Y., 390.)

The election of a person to an office who does not possess the requisite qualifications, gives him no right to hold the office or to claim a certificate of election, and the court will go behind the returns and hear evidence upon issue joined. (*State v. Albin,* 44 Mo., 346; *State v. Stevens,* 23 Kan., 456; *State v. Newman,* 91 Mo., 445; *State v. Williams,* 99 Mo., 291; *State v. McGregor,* 44 O. St., 628; *State v. Lesueur,* 103 Mo., 253; *Sherburne v. Horn,* 45 Mich., 160 )

The legality of the election of relator may be tested in *mandamus* proceedings. (*Kimball v. Lamprey,* 19 N. H., 215; *Walter v. Belding,* 24 Vt., 658; *Burr v. Norton,* 25 Conn., 103.)

On a petition for *mandamus* to compel a county clerk to remove his records to a place claimed to have been designated as the permanent county seat, the facts stated in the petition are traversable, and a peremptory writ should not issue. Where fraud and corruption are set up and alleged in the answers of the respondents, the court should permit the same to be proved. (*State v. Avery,* 14 Wis., 133; *State*

*v. Grace,* 25 Pac. Rep. [Ore.], 382; *State v. Thatch,* 5 Neb., 94; *State v. Marston,* 6 Kan., 524; *State v. Stevens,* 23 Kan., 456; *People v. Jones,* 20 Cal., 50; *Keough v. Board of Aldermen of Holyoke,* 31 N. E. Rep. [Mass.], 387; *Hunter v. State,* 14 Neb., 506; *Boren v. Smith,* 47 Ill., 482; *State v. Hamilton County,* 35 Kan., 640; *McWhirter v. Brainard,* 5 Ore., 426; *Calaveras County v. Brockway,* 30 Cal., 326; *State v. Saxton,* 11 Wis., 25; *State v. Larrabee,* 1 Wis., 178; *Attorney General v. Fitzpatrick,* 2 Wis., 397; *State v. Lean,* 9 Wis., 254; *State v. Fetter,* 12 Wis., 632.)

Where the record shows an honest dispute as to a material fact, the writ should not issue. (*People v. Board of Police of City of New York,* 13 N. E. Rep. [N. Y.], 920; *State v. Washington County,* 2 Chand. [Wis.], 250; *Free Press Association v. Nichols,* 45 Vt., 7; *People v. Salomon,* 46 Ill., 419; *People v. Mayor of Chicago,* 51 Ill., 28; *Commissioners of Yorktown v. People,* 66 Ill., 339; *Springfield & I. S. R. Co. v. Wayne County,* 74 Ill., 27; *People v. Trustees of Schools,* 86 Ill., 613; *People v. Town of Oldtown,* 88 Ill., 202; *State v. New Haven & North Hampton Co.,* 45 Conn., 331; *State Board of Education v. City of West Point,* 50 Miss., 638; *Sabine v. Rounds,* 50 Vt., 74; *Cook v. Town of Peacham,* 50 Vt., 231; *Tyler v. Taylor,* 29 Gratt. [Va.], 765; *Townes v. Nichols,* 73 Me., 515; *People v. Auditor General,* 36 Mich., 271.)

Where an officer has been illegally elected, *mandamus* will not issue to aid him in getting possession of the office. (*Collins v. State,* 8 Ind., 344; *Gulick v. New,* 14 Ind., 93.)

*Sidney Dodge,* also for respondents.

IRVINE, C.

This is the same case which was before the court some months ago and in which an opinion was filed denying the writ prayed for. (*State v. Roper,* 46 Neb., 724.) The decision was based upon the ground that the application did

not show that the relator was entitled to the relief sought. A rehearing was allowed on relator's motion. Certain petitions of intervention, accompanied by answers, were filed, and the case is now presented on the motion of the relator to strike out portions of these answers. The former opinion discloses the material allegations of the application. The intervenors are certain county officers not named as respondents in the application, and certain citizens, electors and taxpayers of Red Willow county, who allege that as such they are interested in the retention of the county seat at Indianola. The answers are substantially alike. They admit the calling of the election and the facts rendering the call legal; admit that the only places voted for were McCook and Indianola; admit the institution in the district court of a contest of the election and an appeal to the supreme court, and allege that the supreme court dismissed the whole case for want of jurisdiction in either court, and admit the official capacity of the original respondents. The other allegations are denied. The intervenors further allege that the total number of votes, legal and illegal, was 2,237, of which there were but 1,339 for McCook, being less than three-fifths of the whole number of votes cast. So far the answers are not attacked. The motion goes, however, to all the rest of the answers, the allegations of which are, in brief, as follows: That the county owns land and a commodious court house and jail in Indianola, and no buildings or other property at McCook; that Indianola has a more convenient geographical location, and that a majority of the citizens and electors do not desire the removal of the county seat. These allegations must clearly be stricken out. If the requisite number of voters at a valid election expressed themselves in favor of removal, it is clear that a removal cannot be defeated in subsequent judicial proceedings on the ground last stated. The question before the court cannot go farther than the ascertainment of the legal expression of the electors' desires when the election was held. It can-

not extend to matters of convenience and present wish
of the electors.   Further, the intervenors charge that Mc-
Cook was a city of more than 2,500 inhabitants, and that
there was no registration of the voters therein ; that a large
number of illegal votes for McCook were cast in certain
precincts; that the relators and others offered rewards and
bribes for votes for McCook in the way of pledges of money
and land for a court house; that certain voters were bribed
to vote for McCook; that void ballots were counted for
McCook, and that challengers were wrongfully kept from
the polls.   The motion to strike out these allegations pre-
sents the question whether in an application for a *mandamus*
of this character the court may go behind the returns and
inquire into the legality of the election.

In an early case in this court (*Anderson v. Colson,* 1
Neb., 172) there was an application to compel a county
treasurer to pay over to the relator, who claimed to have
been elected school district treasurer, moneys to which the
school board was entitled.   The answer alleged facts in
contravention of the legality of the relator's election.   The
case was heard on these pleadings.   This court held that
the pleadings disclosed that there was a dispute as to the
right to the office; that such a question could not be tried
on an application for a *mandamus,* and, therefore, dismissed
the petition.   *State v. Thatch,* 5 Neb., 94, was an applica-
tion similar to this.   The answer alleged in general terms
and upon information and belief that the election was
fraudulent and illegal.   The court held that the answer,
by failing to state the facts on which the charge of fraud
was based, was insufficient, and therefore awarded the writ,
adding *obiter,* that if it were made to appear clearly that a
sufficient number of illegal votes had been cast in favor of
the successful town to give it a majority, this would be suf-
ficient cause for the court to refuse its aid.   In view of the
decision in *Anderson v. Colson, supra,* we take it that what
was in the mind of the court was that if a sufficient an-

swer of such a character was filed, the court would not try the issues in the *mandamus* case but would pursue the course adopted in *Anderson v. Colson,* dismiss the case, and leave the parties to appropriate proceedings to determine the validity of the election.

In *People v. Hamilton County,* 3 Neb., 244, the application was similar to that before us, and the writ was denied because no sufficient notice had been given of the election. The effect of the decision is that the requirement of a notice of elections of this character is mandatory, and without such a notice the election is absolutely void. The question then being not whether the election had been fairly and legally conducted, but whether there had been any election. This case is not in point. *Hunter v. State,* 14 Neb., 506, was a similar application. It does not appear what the answer was. The court reaffirmed *State v. Thatch, supra,* as to the requirements of such an answer, and then decided that the introduction in evidence of a petition for an injunction to restrain the officers from removing the county seat proved only the fact of the pendency of such an action, and did not prove the facts alleged in the petition for the injunction. Beyond this, expressions in the opinion are entirely *obiter.* *Scott v. McGuire,* 15 Neb., 303, was the injunction case referred to in *Hunter v. State.* The court held that an injunction would not be granted to restrain the removal of a county seat on allegations attacking the legality of the conduct of the election.

It has a number of times been held that a canvassing board has no authority to go behind the returns ; that its duty is to canvass the vote as returned to it, and that, therefore, *mandamus* will lie to compel a canvass in accordance with the face of the returns. (*Hagge v. State,* 10 Neb., 51 ; *State v. Stearns,* 11 Neb., 104 ; *State v. Peacock,* 15 Neb., 442 ; *State v. Wilson,* 24 Neb., 139 ; *State v. McFadden,* 46 Neb., 668.) *State v. Jaynes,* 19 Neb., 161, was an application for a *mandamus* to compel the respond-

ent to turn over to the relator, books and papers belong-
ing to the office of justice of the peace to which relator
claimed he was elected. The respondent denied that the
relator had been elected, although he had received a cer-
tificate of election, and alleged that illegal and fraudulent
votes had been counted, by which the relator had been de-
clared elected. The court held that in an application for a
*mandamus* it would not go behind the certificate of elec-
tion and try the relator's title, but would issue the writ in
accordance with the certificate. This doctrine was reaf-
firmed in *State v. Dodson*, 21 Neb., 218, and though the
nature of the cases was somewhat different in *State v: Van
Camp*, 36 Neb., 91, and in *State v. Plambeck*, 36 Neb.; 401.

From a review of the cases we therefore find that the
court has steadfastly refused on application for a *mandamus*
to inquire into the regularity of an election and into the
correctness of the action of the election officers. It has
never tried, but has always refused to try, issues of fraud
and illegal voting. In the earlier cases it held that pre-
senting such an issue was a sufficient reason for refusing
the writ, without trying the issues, until the validity of
the election should be determined in a proper action.
Later, the ground was taken that a canvassing board must
canvass the returns and declare the result according to the
face of the returns; and this led logically to the conclusion
reached in all cases since 1886, that an answer alleging
fraud and illegality in the manner of conducting the elec-
tion sets up no defense, thus in effect overruling the earlier
cases, not so far as they held that such issues would not
be tried in the *mandamus* case, but in so far as they held
that presenting such issues was a defense to the action.
We conceive that the later, and undoubtedly the correct
position is that a canvassing board must proceed according
to the face of the returns, and that the court will give its
aid through a writ of *mandamus* to the person entitled
under such a canvass, either to secure his certificate or to

51

secure the office in pursuance thereof, not as a final determination of the right, but to give effect to the result of the canvass as establishing a *prima facie* right. This must hold true as well in regard to the choice of a county seat as to the choice of an officer.

It is argued that in *Thomas v. Franklin,* 42 Neb., 310, this court held that no jurisdiction was obtained of contest proceedings in regard to this very election; that no contest being permissible, the respondents are without a remedy unless they can obtain it in this action, and that the usual remedy not being applicable, the merits of the election can be inquired into in this case. Assuming the premises to be correct, we would not at this time commit ourselves to the correctness of the conclusion. Some courts of very high authority have held that in such a case inquiry may be made into the issues presented by these answers. On the contrary, there are many cases emanating from courts to whose decisions we owe equal deference, to the effect that a proceeding which is in its nature, whatever may be its form, the contest of an election, is one political or administrative in its character, and not the subject of judicial cognizance unless made so by express statute; that, therefore, where there is no statute authorizing a judicial inquiry into the validity of an election, no such inquiry can be made in any proceeding, and this view is not without some inferential support from this court. (*Miller v. Wheeler,* 33 Neb., 765; *State v. Oleson,* 15 Neb., 247; *State v. Saline County,* 18 Neb., 422.) But the question thus presented it is not necessary to here decide. The statutes expressly provide (Compiled Statutes, ch. 26, sec. 64) that an election for the location or relocation of a county seat may be contested, and we did not in *Thomas v. Franklin* decide either that this statute was unconstitutional or that it was inoperative for failure to provide a method of contest. What we there decided was that an elector, as such, in his own individual name and behalf could not maintain

such a proceeding. The court did not undertake to decide how such a proceeding should be brought, because that question was not presented. The court held that Thomas, as an elector, by himself and in his own behalf, could not maintain it; but it does not follow from that holding that no contest could have been had by proper proceedings. Therefore, assuming that the question is a judicial one, and that fraud and illegality in an election present a case where the courts must in some manner of action afford a remedy, it does not follow that it may be by *mandamus*, and every adjudication is against such a view.

The motion to strike was filed July 19, 1895. On July 22 the relator filed what is styled an answer to the petition of the intervenors. It is now claimed that having answered, the motion cannot be considered. On June 22 the court had made an order requiring the relator to answer the petition of the intervenors within thirty days. The court, after making this order, almost immediately adjourned *sine die*. The answer, protesting that the petitions are irrelevant, is expressly made because of the court's order. Ordinarily, filing an answer to a petition waives any defect which can be raised only by motion, but in view of the fact that the court here in terms required such an answer, of the further fact that a consideration of the motion avoids the unnecessary delay and expense which would be caused by taking a large volume of testimony on the irrelevant issues, and still further, because the pleading filed by the relator was an answer to the petition of intervention, and not a reply to the answers of the intervenors which the motion attacks, we have deemed a decision upon the merits of the motion proper. It follows from what has been said that the motion is sustained.

MOTION SUSTAINED.