STATE OF NEBRASKA, EX REL. GEORGE HOCKNELL, v. GEORGE W. ROPER ET AL.

FILED MARCH 5, 1896. No. 7387.

1. **Counties: RELOCATION OF COUNTY SEAT: ELECTIONS: BALLOTS.** Under the provisions of the act for the relocation of county seats, there being no requirement that abortive ballots shall be certified to the county canvassing board, such ballots cannot be counted for the purpose of making up the grand total, of which a place other than the existing county seat must receive three-fifths to be entitled to the relocation of the county seat, merely because in the certified return of the county election board such ballots were referred to as "ballots not reported or accounted for," or as "rejected" or "blank ballots."

2. ——: ——: ——: ——. Where there were cast upon the question of relocation of the county seat of Red Willow county 867 votes for Indianola, and for McCook 1,339 votes, and the return of county canvassers showed ballots to have been rejected or not to have been voted or accounted for, *held*, that McCook, having received more than three-fifths of the numbers above given, became the county seat of said county. *State v. Roper*, 46 Neb., 724, is overruled.

REHEARING of case reported in 46 Neb., 724, on application for *mandamus* to compel the officers of Red Willow county to remove their offices from Indianola to McCook. *Writ allowed.*

The issues appear in the opinion and in the former report of the case.

31

*A. J. Rittenhouse, J. W. Deweese,* and *W. S. Morlan,* for relator:

Blank ballots, and ballots from which it is impossible to determine the elector's choice, are not votes, are void, and should not be counted. (*Oldknow v. Wainwright,* 1 Wm. Bl. [Eng.], 229; *Rex v. Foxcroft,* 2 Burr. [Eng.], 1017; *State v. Green,* 37 O. St., 230; *St. Joseph Township v. Rogers,* 16 Wall. [U. S.], 644; *Cass County v. Johnson,* 5 Otto [U. S.], 360; *People v. Loomis,* 8 Wend. [N. Y.], 396; *Brown v. McCollum,* 76 Ia., 479.)

The intention of the voter must be ascertained from his ballot. (*Hawes v. Miller,* 56 Ia., 395; *State v. Foster,* 38 O. St., 604; *People v. Pease,* 27 N. Y., 84; *State v. Metzger,* 26 Kan., 395; *Clark v. Board of Commissions,* 33 Kan., 202.)

In the absence of any express regulation as to what shall constitute a majority or three-fifths of the voters or electors, when a majority or three-fifths of the voters or electors are required in favor of a proposition, the proposition is carried by a majority or three-fifths of the voters who vote on that proposition. (*Oldknow v. Wainwright,* 1 Wm. Bl. [Eng.], 229; *Rex v. Foxcroft,* 2 Burr. [Eng.], 1017; *State v. Green,* 37 O. St., 230; *St. Joseph Township v. Rogers,* 16 Wall. [U. S.], 644; *Cass County v. Johnson,* 5 Otto [U. S.], 360; *Everett v. Smith,* 22 Minn., 53; *State v. Mayor of St. Joseph,* 37 Mo., 270; *Sanford v. Prentice,* 28 Wis., 358; *Holcomb v. Davis,* 56 Ill., 414; *Heiskell v. Mayor of Baltimore,* 65 Md., 125; *Attorney General v. Shepard,* 62 N. H., 383; *Rushville Gas Co. v. City of Rushville,* 121 Ind., 208; *People v. Wiant,* 48 Ill., 266; *Walker v. Oswald,* 68 Md., 146; *Taylor v. Taylor,* 10 Minn., 81; *Gillespie v. Palmer,* 20 Wis., 554; *Bayard v. Klinge,* 16 Minn., 221.)

As to the mode of ascertaining what constitutes three-fifths of the voters, reference was made to the following authorities: *People v. Warfield*, 20 Ill., 163; *Louisville & N. R. Co. v. County Court*, 1 Sneed [Tenn.], 691; *State v. Winkelmeier*, 35 Mo., 103; *People v. Wiant*, 48 Ill., 266; *Chester & L. N. G. R. Co. v. Commissioners of Caldwell County*, 72 N. Car., 486; *Hawkins v. Supervisors of Carroll County*, 50 Miss., 735.

*S. R. Smith, W. R. Starr, H. W. Keyes*, and *Reese & Gilkeson*, contra.

References: *People v. Brown*, 11 Ill., 479; *State v. Crabtree*, 35 Neb., 108; *State v. Lancaster County*, 6 Neb., 474; *State v. Brassfield*, 67 Mo., 331; *State v. Sutterfield*, 54 Mo., 391; *State v. Mayor of St. Louis*, 73 Mo., 435; *State v. Walsh*, 25 Atl. Rep. [Conn.], 1; *Slingerland v. Norton*, 61 N. W. Rep. [Minn.], 322; *State v. Hill*, 20 Neb., 122; *State v. Wilson*, 24 Neb., 139; *Brower v. O'Brien*, 2 Ind., 423; *Lewis v. Commissioners of Marshall County*, 16 Kan., 102; *State v. Stevens*, 23 Kan., 456; *State v. Commissioners of Hodgeman County*, 23 Kan., 268; *Hagerty v. Arnold*, 13 Kan., 367; *Strong, Petitioner*, 20 Pick. [Mass.], 492; *Dalton v. State*, 11 Am. & Eng. Corp. Cases [O.], 78; *Patten v. Florence*, 38 Kan., 501; *Kreitz v. Behrensmeyer*, 125 Ill., 182.

RYAN, C.

This case has twice received the attention of this court, *vide State v. Roper*, 46 Neb., 724, and under same title, 46 Neb., 730. By the action of this court above last referred to there were left to contest the questions presented only such defendants as it is claimed were bound by reason of being county officers, to remove their respective

offices to McCook, the place where, as the relator insists, the county seat of Red Willow county was relocated by a special election held to determine that proposition. By the opinion first above referred to, the *mandamus* applied for was denied. Afterwards a rehearing of the matters considered in said opinion was granted, and we are now required to pass upon the question therein discussed. Practically the averments of the petition may be taken as true, for, in support of such as were controverted, and they were of minor importance, there was submitted such evidence as left no room for doubt. If, therefore, a fuller statement of the facts of this case than is herein given shall be deemed desirable, this can be found in the description of the averments of the petition in the opinion first filed. For our present purpose it is sufficient to say that as to the relocation of the county seat of Red Willow county the canvassing board's return of the votes cast at said election was, as shown by the totals, as follows:

At Indianola ........................... 867
At McCook ............................ 1,339
Ballots not reported or accounted for..... 25
Ballots rejected ........................ 1
Blank ballots .......................... 3
Ballots written for McCook and not
    counted ............................. 2
                                        ———
        Total vote of precinct............. 2,237

In the former opinion (46 Neb., 724) it was said that the question presented was whether or not the petition, or application, which disclosed the above condition of the return, no other ground of criticism of the petition existing, stated a cause

of action, and it was held that the contention in
favor of McCook could not be sustained. This
contention was that, as Indianola and McCook
together received 2,206 votes, and that as 1,339
for McCook were more than three-fifths required
to locate the county seat at that place, it must
thenceforward be held to be the county seat. The
case of *State v. Lancaster County*, 6 Neb., 474, was
in said opinion cited to support the holding
thereof adverse to McCook, and as the case cited
was correctly epitomized in said former opinion,
such part of the language as was therein used for
the purpose of making such epitome is quoted as
follows: "Section 5, article 10, of the constitu-
tion provides: 'The legislature shall provide by
general law for township organization, under
which any county may organize whenever a ma-
jority of the legal voters of such county voting
at any general election shall so determine.' A
proposition to adopt township organization was
submitted to the voters of Lancaster county at
the November, 1877, election.   At the election
held at that time there were cast 2,451 votes; 952
were cast in favor of, and 601 votes were cast
against the proposition. The county commission-
ers refused to complete township organization as
provided by law, and application was made to
this court for a peremptory writ of *mandamus*
to compel the county commissioners of Lancaster
county to complete township organization in
said county by dividing the county into towns
and appointing town officers, etc., and this court,
construing the constitutional provision quoted
above, held that, in order to adopt township or-
ganization, a majority of all the legal voters of
the county voting at the election must be recorded

in favor of township organization." It is unnec-
essary to consider other authorities cited in the
aforesaid opinion in this case, for they clearly
support the same general principle, and that is,
that when a proposition of the nature of that
under consideration is submitted at a general
election, the highest number of votes cast on any
proposition or for any candidate is assumed to be
the total number of which the requisite majority
must be obtained. Our present difficulty is not
so much with the correctness of this abstract rule
as with its application to the return of the can-
vassing board. If the votes cast for Indianola,
867, and for McCook, 1,339, should alone be con-
sidered, clearly McCook has more than three-
fifths of the total 2,206 thereby made up. In the
former opinion, however, the requirement of
three-fifths of all votes cast was held to assume
that in the votes cast should be included twenty-
five ballots "not reported or accounted for,"
one "ballot rejected," three "blank ballots," and
two "ballots written for McCook and not
counted." A re-examination of this question has
satisfied us that we were mistaken in construing
the requirement of three-fifths of all the votes cast
as indicating the necessary proportion of all the
above items aggregating 2,237 ballots. With re-
spect to the principles which should govern in
determining questions of the nature of those now
presented, a review of the most nearly analogous
cases cited by counsel for the parties litigant
herein, it is believed, will not be wholly useless.

In *Gillespie v. Palmer*, 20 Wis., 544, there was
under consideration a section of the constitution
which contained a proviso which made its adop-
tion dependent upon an approval by a majority

of all the votes cast at such election.    In the opin-
ion of the court there was the following lan-
guage: "What is the meaning of the word 'vote'?
It is the expression of the choice of the voter for
or against any measure, any law, or the election
of any person to office."

In *State v. Green*, 37 O. St., 227, the following
definition of the word "vote," given by Davies,
J., in *People v. Pease*, 27 N. Y., 45, was approved:
"A vote is but the expression of the will of a voter;
and whether the formula to give expression to
such will be a ballot or *viva voce*, the result is the
same; either is a vote."    Both parties to this liti-
gation cite the decisions of the supreme court of
Missouri, and upon behalf of the plaintiff there is
relied upon the *County of Cass v. Johnston*, 95 U. S.,
360, based on a Missouri case.    These are of little
practical value in this state, for the rule of con-
struction therein is radically different from that
adopted by this court, as is illustrated by the fol-
lowing quotation from *State v. Francis*, 95 Mo., 44:
"When by law a vote is required or permitted to
be taken, and a majority of the legal voters is
mentioned in such law as being necessary to carry
the proposed measure, such majority must be a
majority of all the legal voters entitled to vote at
such election and not a mere majority of those
voting thereat."

In *Everett v. Smith*, 22 Minn., 53, the require-
ment of a "majority of such electors" was held to
refer to those who voted, and in *Sanford v. Pren-
tice*, 28 Wis., 358, the same construction was given
the words "a majority of the legal voters of the
said district."

In *Holcomb v. Davis*, 56 Ill., 413, there was under
consideration a herd law which, by its own terms,

was. declared not to be in force "until it shall be ratified by a majority of the legal voters of the county," etc., and this was held to require only a majority of the votes cast on the proposition submitted.

In *People v. Wiant*, 48 Ill., 263, it was said that if the return of the various poll books of the county showed a larger number of votes cast for circuit judge, or other officer, than were cast for and against the removal of the county seat, then that should be taken as the number of voters of the county.

In *County Seat of Linn County*, 15 Kan., 500, it was said: "It is a general rule, in respect to elections, that where the number of the electoral body is fixed, as in case of the directors or members of a corporation, or a legislature, there a majority means a majority of the whole body; but where the electoral body is indefinite in numbers, as in ordinary popular elections, there a majority means a majority of the votes actually cast."

With the exception of the case last above cited, those of other states, except Missouri, simply adhere to the rule adopted in this state. In the *County Seat of Linn County* there is, however, stated the distinction between corporate or political bodies having a fixed membership and those wherein the membership is indeterminate with respect to the data from which a majority must be estimated. Where there occurs at the same time a general and a special election, there is given an exact basis from which to ascertain the number of electors, and that is the greatest number of votes cast for any candidate or proposition. Where the election is special and confined to a single proposition, there is no occasion

for a resort to this method of finding the total number of electors, and this is especially true when the requisite majority is of the "votes cast."

As to the effect to be given to the disclosed fact that others than those counted were present, *Old-know v. Wainwright*, 1 Wm. Bl. [Eng.], 229, is somewhat instructive, as will be seen by the following copy of that case as reported: "On a special verdict, the question was, whether Segrave, the town clerk of Nottingham, was legally elected. There were twenty-one electors present; nine of whom voted for Segrave; eleven protested against him, without voting for any one else, and one other said that 'he suspended doing anything.' It was argued by Mr. Caldecot, that this was such a negative upon Segrave, that his election was invalid.  Serjeant Hewit, *contra*, in Easter Term last; and now *per tot. Cur.* The election is clearly good.  The eleven protestant dissenters, having voted for nobody, could not put a negative upon the only man put in nomination, and Wilmot, J., cited K. and Withers, H., 8 Geo., 2; K. and Boscawen, P., 13 Anne;  and Taylor and the Mayor of Bath, *temp.* Lee, C. J., to shew that, where a majority do nothing but merely dissent, they lose their votes." The proposition in support of which the citations were made by Wilmot, J., was stated and enforced in *State v. Green, supra*, in *Attorney General v. Shepard*, 62 N. H., 383, and in *Rushville Gas Co. v. City of Rushville*, 121 Ind., 206.

In *Walker v. Oswald*, 68 Md., 146, it was held that when an election is held at which a subject-matter is to be determined by a majority of the voters entitled to cast ballots thereat, those absenting themselves, and those who, being present, abstain from voting, are considered as acquies-

cing in the result declared by a majority of those actually voting, even though, in point of fact, but a minority of those entitled to vote really do vote.

In *People v. Town of Sausalito*, 39 Pac. Rep. [Cal.], 937, the question was whether or not there was, in fact, a majority of the votes cast "for incorporation." There were seven official ballots without a mark placed on either of them by any one to indicate his wish in any particular. These were held to be no votes, and discussing the effect to be given them, the court said they were not to be counted or considered for any purpose.

The respondents specially rely upon *State v. Walsh*, 62 Conn., 260. In this opinion were quoted the following provisions of the statute applicable to the election under consideration: "The presiding officer shall, with the certificate upon the result of the electors' meeting, which he is required to send by mail to the secretary of the state, send to the secretary his certificate of the whole number of names on the registry lists, the whole number checked as having voted at such elections, the whole number of names not checked, the number of ballots found in each box, namely, 'general and representative,' and the number of ballots in each box not counted as in the wrong box, and the number not counted for being double, and the number rejected for other causes, which other causes shall be stated specifically in the certificate." It appears from the statutory returns that eleven ballots in one town and one ballot in each of two other towns had been rejected, but the reason of such rejection neither appeared in returns of the presiding officers nor by the evidence offered in court. In respect to the contention that the rejected votes should not be con-

sidered in determining the whole number of votes cast, a majority of the supreme court of errors of Connecticut said: "Under a plurality rule, it is material only to count the votes of the two highest candidates. All scattering votes are practically disregarded. Under the majority rule, all scattering votes are important, and must be counted. * * * If it appears upon the face of the returns that the ballots were legally rejected, it would have presented a different case. There is a presumption in favor of the legality of a transaction when it appears to have been done in compliance with the law; but there is no such presumption when it appears that the law was not complied with and the courts can make no intendment in favor of its legality. The law requires that the cause for rejecting a ballot shall be stated specifically in the certificate. That duty was wholly omitted. The act of rejection is illegal on its face. There can be no presumption to sustain an illegal act." It was in accordance with the views of a majority of the above court held that in ascertaining what candidates had received a majority, as distinguished from a plurality of all the votes cast, those rejected without a reason being given for such rejection must be reckoned in making up the grand total. If our statute required that the causes for rejecting ballots in county seat elections should be stated specifically in the certificate of the returns, the case just considered would have tended strongly to sustain the contention of the defendants. In connection with this particular statute, however, no such requirement exists. The rejection of ballots upon the face of the return seems not to have been in violation of the provisions of the statute or of

any law to which our attention has been called. The principle that "there is a presumption in favor of the legality of a transaction when it appears to have been done in compliance with law," therefore, is applicable to the action of the various precinct officers with respect to the rejection of the twenty-five ballots not reported, or accounted for, the one ballot rejected, and the three blank ballots. Whether or not the same presumption extends to the two ballots written for McCook and not counted we need not determine, for these should either have been counted for McCook or, if in that respect rejected, they should have been rejected for all purposes. From the foregoing considerations it results that McCook, having received three-fifths of all the votes cast, should in this proceeding be held to be the county seat of 'Red Willow county. A writ will therefore issue as prayed.

WRIT ALLOWED.

HARRISON, J., and RAGAN, C., dissenting.