### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

# EASTERN DIVISION.

---

## KNOXVILLE, SPECIAL MAY TERM, 1908.

---

W. R. CATLETT, JR., *et al. v.* KNOXVILLE, SEVIERVILLE &
EASTERN RAILWAY COMPANY *et al.*

*(Knoxville.* Special May Term, 1908.)

1. **ELECTIONS.** Chancery jurisdiction of contest of election to
   determine whether a county shall take stock in a railroad.

   In the absence of any statutory provision for the contest of an
   election to determine whether a county shall subscribe to the
   stock of a railroad company, a suit to invalidate the declared
   result of such election should be brought in the chancery court,
   which has jurisdiction of controversies of this kind. (*Post,*
   p. 707.)

   Cases cited and approved: Winston v. Railroad, 1 Bax., 60;
   Bouldin v. Lockhart, 1 Lea, 195; Braden v. Stumph, 16 Lea,
   581; Lindsay v. Allen, 112 Tenn., 637, 660.

2. **SAME.** Same. Circuit court has jurisdiction of a suit to
   invalidate an election held to determine whether a county shall
   subscribe to stock in a railroad.

   Under our statute (Shannon's Code, section 6074) authorizing the
   circuit court to determine suits of an equitable nature, where no
   objection to its jurisdiction is made by demurrer, the circuit
   court has jurisdiction of a suit to invalidate the declared result

Catlett v. Railroad.

of an election held to determine whether a county should subscribe to the capital stock of a railroad company, where no objection was made by demurrer. (*Post, pp.* 707, 708.)

Code cited and construed: Secs. 4887, 6063, 6074 (S.); secs. 3872, 4997, 5008 (M. & V.); secs. 3155, 4225, 4236 (T. & S. and 1858).

Case cited and approved: Bouldin v. Lockhart, 3 Bax., 262.

3. **SAME.** Supreme court will review judgment of circuit judge based upon examination of ballots, and will not consider the power of the commissioners of elections and of the quarterly county court to do so, when.

Where, in a suit in the circuit court to invalidate the declared result of an election held to determine whether a county should subscribe to the capital stock of a railroad company, the circuit judge determined that he had the right to make an independent investigation and examine the ballots, and accordingly made such investigation and rendered judgment, the supreme court is required only to re-examine the judgment of the circuit judge, and the question whether the commissioners of elections and the quarterly county court had the right to go behind the poll lists and returns, made by the election officers, and examine the ballots therewith returned in pursuance of the requirement of statute, will not be considered by the supreme court. (*Post, pp.* 708, 709.)

Acts ctied and construed: Acts 1907, ch. 436, sec. 15.

4. **SAME.** Ballots not of plain white paper are void.

Ballots not of plain white paper cast in an election held to determine whether a county should subscribe to the capital stock of a railroad company are void on that ground. (*Post, pp.* 710, 711.)

Code construed, though not cited: Sec. 1259 (S.).

Acts construed, though not cited: Acts 1891 (ex. ses.), ch. 21, sec. 1; Acts 1893, ch. 101.

Catlett  v.  Railroad.

5.  **SAME.**  Striking out "For" in the phrase "For subscription," and writing "Against" before, above, or below renders ballot void, when.

Ballots cast in an election held to determine whether a county should subscribe to the capital stock of a railroad company are void, where they contained marks by pen or pencil striking out the word "For" in the phrase "For subscription" printed thereon, with the word "Against" written before, above, or below the said word "For" so stricken out. (*Post, pp.* 709, 711.)

Acts cited and construed:  Acts 1891 (ex. ses.), ch. 21; Acts 1893, ch. 101.

Case cited and approved:  Cross v. Keathley, 119 Tenn., 567.

6.  **SAME.**  Word "votes" means legal votes; for illegal votes or ballots constitute no votes at all.

Under the statute (Acts 1887, ch. 3, sec. 9) authorizing an election to determine whether a county shall subscribe to the capital stock of a railroad company, and providing that if three-fourths of the votes cast at such election are in favor of the subscription, the quarterly county court shall take such action as may be required to make such subscription effective, the word "votes" means legal votes; for illegal votes or ballots do not really constitute votes at all, and are not to be counted in determining whether or not three-fourths of the votes are in favor of the subscription. (*Post, p.* 712.)

Acts cited and construed:  Acts 1887, ch. 3, sec. 9.

Cases cited and approved:  State, ex rel., v. Roper, 47 Neb., 417; Hopkins v. Duluth, 81 Minn., 189.

---

FROM  SEVIER.

---

Appeal from the Circuit Court of Sevier County.— G. Mc. HENDERSON, Judge.

JAMES H. WELCKER and W. A. BOWERS, for plaintiffs.

TEMPLETON & TEMPLETON, PENLAND & PAINE and ZIRKLE & McMAHON, for defendants.

---

MR. JUSTICE NEIL delivered the opinion of the Court.

After the necessary preliminaries required by the statute had been complied with, the quarterly court of Sevier county ordered that an election should be held on the 14th of December, 1907, by the election commissioners of the county, to obtain the sense of the people as to whether the county should subscribe $150,000 to the capital stock of the defendant railway company. Pursuant to the statute, it was directed that those in favor of the subscription should put upon their tickets the words "For subscription," and those opposing should put upon their tickets the words "No subscription." The election was accordingly held, and the quarterly county court again met on the 21st of December, 1907, to receive the report of the election commissioners and to act thereon. Prior thereto—that is, on December 18, 1907—the election commissioners, through two of its three members, Chairman John W. Sharp and J. B. Brabson, filed with the clerk of the court their report as to the result of the election, showing that they had opened and held the election, after due advertisement, as directed, in all of the civil districts of Sevier county, enumerating them. They further certified that all the returns from all the voting places in the county had

Catlett v. Railroad.

been duly received by them from the election officers as required by law, and that on the 16th of December, 1907, they met in the courthouse at Sevierville—that is, two of them, the two above mentioned, the other member, J. L. Yarberry, being absent on account of sickness—and on the date just mentioned began the work of opening, comparing, and compiling the returns, which work not being completed on that day, adjournment was had until the following day, when it was resumed and finished. It was also certified that in all the voting precincts in the county, except those in the sixth civil district thereof, the officers and judges of election had transmitted and delivered to them as part of their returns the ballots cast at the election, and that the total number of votes cast "For subscription" was 2,008, and the total number cast "No subscription" was 555; that therefore three-fourths of the votes cast were in favor of subscription. They further certified that the returns embraced 270 ballots which bore distinguishing marks or words, contrary to the statutes of this State, and were illegal and void; that these illegal and void ballots were not counted by them, but were reserved and submitted with their report, along with the general returns, including all the poll lists and ballots, to the court.

On the 21st day of December, 1907, the quarterly county court reassembled in special session, pursuant to adjournment and to notice, for the purpose of receiving and acting upon the returns, and the report of the election commissioners of said county, as to the result of

the election held on the said 14th day of December. At
that session the court passed and directed the entry of
an order, among other things, finding and adjudging that
the election had been held by the election commissioners,
as directed by the court and as required by law, in every
established voting place in the county; that the judges
and officers of the election, in making returns from the
different voting places, included in their returns, and
as part thereof, the ballots that had been cast in the
election, except those from the voting precincts in the
sixth civil district, from which the ballots were not re-
turned by the election officers; that there were cast in
said election 270 ballots which were not in conformity
with the law under which said election was held and
with the order of the court directing the holding thereof;
that these 270 ballots bore distinguishing marks, or
were otherwise disfigured, and did not contain the words
"No subscription" or the words "For subscription;" that
after the 270 ballots were inspected by the court, and a
full investigation and consideration thereof had by the
court, it was adjudged that these 270 ballots were illegal
and void, and not to be taken into consideration in
ascertaining the result of the election, and ratifying and
affirming the action of the election commissioners in re-
jecting and throwing out the said 270 ballots; that there-
upon it was adjudged by the court that the number of
votes cast "For subscription" was 2,008, and the num-
ber of votes case "No subscription" was 555, and that
more than three-fourths of all the votes cast in the

election were in favor of the subscription, and that the election was in all respects fair; that by virtue thereof said subscription had been made, and was accepted by the court, and the court directed that its chairman be constituted the agent of the county for the purpose of having bonds prepared, and to arrange for the payment of the subscription when it should become due under the terms and conditions of a former order of the court, pronounced October 29, 1907.

A motion was made by the plaintiffs in the present case, asking delay in order that they might investigate the election and find means of showing its invalidity. The motion was overruled, and the order entered as above stated.

Thereupon a petition was filed in the circuit court, complaining of the election and asking that the subscription be declared void. The special ground of the complaint was that the board of election commissioners and the county court had thrown out the 270 ballots above referred to, without authority to take such action, and it was insisted that these votes were valid ones, and should have been counted, and, if counted, that the result would be that the subscription had not carried by a three-fourths vote, but had been lost. This bill was filed against the railway company, the board of election commissioners, the county court, and Sevier county. All of these defendants answered upon the merits, and at the same time the railway company filed a cross-petition in which it complained of the 270 ballots, alleging that they

120 Tenn.—45

were void and should be stricken out on the trial of the matter in the circuit court. To this cross-petition the petitioners or plaintiffs in the original petition were made defendants; also Sevier county. This was likewise answered. The original petitioners were taxpayers of the county.

In the court below the case was heard on an agreed statement of facts, supplemented as to some points by the evidence of two witnesses.

The circuit judge, after considering the case upon the pleadings and the evidence held that neither the election commissioners nor the county court had the power to go behind the returns and purge the ballots, but that he himself, under the case made by the pleadings, had the right to do so, and the correct result had been reached by both of the bodies referred to. In other words, the circuit judge held, upon an independent investigation, that the 270 ballots were illegal and should be excluded, and that on excluding them it appeared that there were 2,008 votes "For subscription" and 555 votes "No subscription," which resulted in a judgment that the subscription had carried by the requisite three-fourths vote prescribed by Acts 1887, p. 57, c. 3.

From the foregoing judgment the original petitioners appealed to this court and have here assigned errors.

The errors assigned are five in number, but they are all in substance that the circuit judge reached an incorrect conclusion and that his judgment should be reversed.

Before going further, it is proper to note that the counsel and the court below seem to have assumed that the present action was, in effect, a contested election, and that the jurisdiction rested upon that ground. This is a mistaken view. There is no provision made for a contest of an election of this character. Regularly the action should have been brought in the chancery court, which has jurisdiction of controversies of this kind, as shown in *Lindsay* v. *Allen,* 112 Tenn., 637, 660, 82 S. W., 171, *Braden* v. *Stumph,* 16 Lea, 581, *Winston* v. *Tennessee & Pacific R. R. Co.,* 1 Baxt., 60, and *Bouldin* v. *Lockhart,* 1 Lea, 195. However, there is a provision in the Code which gives to the circuit court jurisdiction of all cases in chancery, provided no one objects by demurrer. In this case no demurrer was filed, and therefore the jurisdiction was secure. We infer that this was the ground on which the court sustained jurisdiction of the circuit court in the case of *Bouldin* v. *Lockhart,* 3 Baxt., 262. However, the question is not made there, nor is the record accessible. In the syllabus to that case it is called a contest erroneously.

The section to which we refer is section 6074 of Shannon's Code, which reads as follows: "Any suit of an equitable nature brought in the circuit court where objection has not been taken by demurrer to the jurisdiction may be transferred to the chancery court of the county or district or heard and determined by the circuit court upon the principles of a court of equity with power to order and take all proper accounts and otherwise perform the functions of a chancery court."

Section 6063 reads: "The circuit courts of this State are courts of general jurisdiction, and the judges thereof shall administer right and justice according to law, in all cases where the jurisdiction is not conferred upon another tribunal."

Another section which bears upon the same subject, and confirms the jurisdiction, is section 4887, which reads: "Either party dissatisfied with the judgment or decree of the circuit or chancery court, in a matter of equity tried according to the forms of the chancery court, may appeal to the supreme court, and have a re-examination in that court of the whole matter of law and fact appearing in the record."

Another preliminary matter that should be noticed before going to the merits of the controversy is that the general assembly of 1907 made some additions to our election laws. Chapter 435, p. 1480, provides for a State board of elections, and prescribes the duties of that board. Chapter 436, p. 1483, prescribes that the State board for and in each and every county in the State shall appoint a board of three commissioners, that shall be known as commissioners of elections. The chapter just referred to prescribes their duties. Section 15 provides "that it shall be the duty of the officer holding the election to deliver the polls or returns of the election sealed as received, together with the ballots cast in said election to the said commissioners of elections not later than 12 o'clock noon on the first Monday after the election."

This requirement as to the delivery of the ballots is a

new one. On this the commissioners of election in Sevier county, and the county court, based their right to go behind the poll lists and returns and examine the ballots. We need not consider the question whether they acted correctly in so doing or not, as the circuit judge held that he also had the right to make an independent investigation, and we are to re-examine his judgment, and not that of the board of election commissioners, or the count made by the county court.

We shall now state the facts on which the merits of the controversy turn. The bill of exceptions describes the various ballots composing the 270 rejected votes under ten classifications, as follows:

"(1)   Batch A1, containing 119 ballots, which have each on same the words 'For subscription' printed, the printed word 'For' being stricken or marked out by pencil or pen marks through said word and the word 'Against' written in pencil below.

"(2)   Batch A2, containing two ballots, having the same words printed on each as above set out, the word 'For' being rubbed or scratched out, and in place thereof the word 'Against' written in pencil just before the printed word 'subscription.'

"(3)   Batch A3, containing three ballots, two having no printed words thereon, but the words 'Against subscription' written on and across each, and the third one having the words 'For subscription' printed on it, which words have a pencil mark through them, with the words 'Against subscription' written below, and two marks below the last-named words, thus '1 1.'

"(4) Batch A4, containing twenty ballots, with the printed words thereon 'For subscription,' the word 'For' being marked by pencil or pen marks so as to deface or disfigure same, and the word 'Against' written above one or both of said words.

"(5) Batch A5, containing thirty-nine ballots, none having any printed words thereon, but all having the written words 'Against subscription' thereon. Six of them are not of plain white paper.

"(6) Batch A6, containing one ballot, having the words 'For subscription' printed, and the words 'Against subscription' written underneath same, and none of said words being marked or erased.

"(7) Batch A7, containing one ballot having the words, 'For subscription' printed thereon, which words are stricken out by two lines drawn through them, and the word 'Against' written under the same.

"(8) Batch A8, containing one ballot, having the words 'For subscription' printed thereon, which words are stricken out by three lines drawn through same, and the words 'No railroad' written thereunder.

"(9) Batch A9, containing one ballot, having the words 'For subscription' printed on it, and the word 'For' being stricken out by three lines drawn through it, and the word 'Not' written just below said word 'For.'

"(10) Batch A10, containing eighty-three ballots, having on each the words 'For subscription' printed thereon, which words are stricken out by lines drawn through same, and the words 'Against subscription'

Catlett  v.  Railroad.

written under same; that 1 of them has the said printed word 'For' only stricken out, and the word 'Against' written below, and the other, which is like the last-named ballot, except the word 'Against' is written above."

Two of the ballots in batch A3 and thirty-nine ballots in batch A5 raise the question whether a paper of the statutory length and width, having written thereon the words "Against subscription," should be held equivalent to the words "No subscription," prescribed by the Acts of 1887. However, six of the ballots in batch A5 are not on plain white paper, and are therefore void on that ground. Still, laying aside this last point, and treating all of the forty-one ballots as raising the question just stated, we do not find it necessary to consider this question, nor do we express any opinion upon it, because it appears that the remaining 229 of the 270 ballots are void, and, deducting these from the whole number returned, there is still a three-fourths vote in favor of the subscription.

We do not deem it necessary to go into an extended examination of the question whether the various marks and defacements found upon the ballots in batch A1, batch A2, the third ballot in batch A3, and the ballots in batches A4, A6, A7, A8, A9, and A10, render these ballots void, since we think the question is fully covered by the case of *Cross* v. *Keathley,* decided at the last term at Knoxville, and reported in 119 Tenn., 567, 105 S. W., 854. For the reasons stated in that case, we hold the

ballots referred to were in violation of our election laws therein set out, and hence void.   Chapter 21, p. 42, Acts. Ex. Sess. 1891; chapter 101, p. 208, Acts 1893.

Acts 1887, p. 59, c. 3, section 9, provides that it shall be the duty of the county court to convene on the call of its presiding officer for the purpose of acting on the returns of the election officers within ten days after the election, and if it shall appear that the same was in all respects fair, and that three-fourths of the votes cast at such election were in favor of subscription, then "it shall have full power, and shall proceed to make and execute all necessary orders, and take such action as may be required to make the subscription effective, according to the terms thereof and the provisions of this act."   It is observed that the act does not say three-fourths of the legal voters, but three-fourths of the votes cast.   The question arises as to whether the illegal votes should be considered in determining the number of votes cast.   We think they should not be so considered.   This question is covered by the cases of *State, ex rel. Hocknell,* v. *Roper,* 47 Neb., 417, 66 N. W., 539-541, and *Hopkins* v. *City of Duluth,* 81 Minn., 189, 83 N. W., 536, 537, 538.   In addition to these authorities, the matter rests on sound reason, because the legislature necessarily meant all legal votes cast.   An illegal ballot does not really constitute a vote at all.

In what we have said we have disposed of the whole controversy, and the matter need not be further discussed.

Catlett  v.  Railroad.

Some questions were reserved in the court below as to the payment of costs and counsel fees, and, in order that these matters may be settled and disposed of, the case is remanded to the circuit court of Sevier county.

The original petitioners will pay the costs of this court.

The costs of the court below will be paid as decreed by the circuit judge.