THE TERRITORY OF OKLAHOMA *ex rel* FRANK H. McGUIRE, *County Attorney,* v. THE BOARD OF TRUSTEES FOR THE COUNTY HIGH SCHOOL OF LOGAN COUNTY *et al.*

(Filed March 4, 1904.)

1. **ELECTION—Majority of Votes Cast—Meaning of.** Where an election is legally called and held under chapter 28 of the law of 1901 to determine whether a county high school shall be established, and at which a majority of the votes cast upon the proposition are in favor of the same, the proposition will be adopted, although it .may not have received a majority of all the votes cast upon other questions submitted at the same election.

2. **SAME—County High School—Location of.** Where a statute in reference to the establishment of county high schools provides that, "When one-third of the electors of the county, as shown by the returns of the last preceding election, shall petition the board of county commissioners requesting that a high school be established in their county at a place in said petition named," etc., a petition presented to said board requesting that "a county high school be established in Logan county, Oklahoma Territory, in or near the city of Guthrie, in said county," sufficiently names and designates the place at which such a school is desired to be located, and is a substantial compliance with the requirements of the statute.

3. **SITE FOR HIGH SCHOOL—Conveyance by Trustee.** Where a member of the board of trustees of such county high school is the owner of a platted addition to the city of Guthrie, and donates and conveys a block of said addition to the county as a site for such high school building, such conveyance will not be avoided by reason of any interest such trustee may have in adjoining premises, where no fraud or undue influence of such trustee is shown or alleged, and no claim is made that the site selected is not a proper and suitable one for the purpose.

4. **SAME—Title to.** In such case the title of the county to said premises will be upheld by this court, where the record shows the title of the said trustee to have been heretofore affirmed by this court, and that notwithstanding an appeal from such decision is now pending in the supreme court, of the United States.

5. **MUNICIPAL CORPORATIONS—Powers of.** There cannot be, at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdiction and privileges. And where the statute creates a high school board of trustees, and authorizes such board to erect a high school building and create an indebtedness therefor and for teachers, wages and contingent expenses, and "to issue warrants for the amount of the same payable in equal annual installments of not less than

five nor more than twenty years, drawing interest at the rate of six per cent. per annum," etc., such warrants, when so issued, will create a county indebtedness, and can only be issued in such amount as when taken in connection with the county indebtedness already existing, will not exceed the federal limitation of four per cent.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Frank H. McGuire, County Attorney, John Devereux, J. C. Strang* and *Cotteral & Hornor,* for plaintiff in error.

*Dale & Bierer,* for defendants in error.

Opinion of the court by

GILLETTE, J.: At its session for the year 1901, the legislature of the Territory of Oklahoma passed an act entitled: "An act to authorize the establishment and maintenance of county high schools." After providing in the first section that "Each county in the Territory of Oklahoma having a population of 6,000 inhabitants or over    *    *    *    may establish a high school," etc.; the second section provides:

"When one-third of the electors of the county    *    *    * shall petition the board of county commissioners requesting that a high school shall be established in their county at a place in said petition named    *    *    *    they shall give twenty days' notice previous to any general or special election, that they will submit the question to the electors of said county whether such high school shall be established, and at the place specified, at which election the electors of the county shall vote by ballot for or against establishing such high school. The notice contemplated in this section shall be given as are all legal notices of a general or special election."

"Section 3. Said election shall be held in the same manner as are elections for county officers; and the votes on said

question shall be canvassed in the same manner as in the
election of county officers, and if a majority of all the votes
cast shall be in favor of establishing such high school   the
county commissioners shall immediately proceed to appoint
six persons,   *   *   *   who shall, with the county super-
intendent of instruction, constitute the board of trustees for
such school.   *   *   *"

At the October, 1902, session of the board of county
commissioners of Logan county, there was presented to said
board a petition for a county high school in said county, as
provided for in said act, and the commissioners granted the
prayer of said petition and ordered "that said question be
submitted to the electors of the county at the next regular
election to be held November 4, 1902," and ordered notice
thereof to be published in the Oklahoma State Capital and
the Guthrie Daily Leader; the material part of which notice
is as follows:

"Notice is therefore hereby given that at the next general
election to be held throughout Logan county on the 4th day of
November, 1902, that the said board of county commission-
ers shall submit the question to the electors of said county,
whether such county high school shall be established in or near
the city of Guthrie, at which election the electors of said
county shall vote by ballot for or against the establishment
of such county high school," etc.

The notice was duly published and election held, at which
election 1,535 votes were cast for the high school and 1,051
against the same.

Acting upon the theory and belief that the establishment
of a county high school had been authorized by this vote of
the electors, the board of county commissioners appointed six
freeholders of said county, who, with the county superinten-

dent of instruction, should constitute the board of trustees for such school, and the said board so appointed and constituted thereafter duly qualified as provided by the act and entered upon the discharge of their duties.

Prior to the month of August, 1903, the said board of high school trustees, having obtained a site for the erection of a high school building, had adopted plans and specifications for the same, and had advertised for bids for the erection of such building, and had also made an estimate of the amount of funds needed for the erection of said high school building, for the payment of teachers' wages, and for contingent expenses for the year 1903, and had presented to the board of county commissioners a certified estimate of the rate of tax required to raise the amount desired.

The board of county commissioners had taken action upon said report of the high school board, and directed the levy of a tax upon the taxable property of said Logan county for the purpose above indicated, when, on the 4th of August, 1903, the petition in this cause was filed in the district court of Logan county, praying for an order restraining the defendants, the high school board and the several members thereof, from awarding or letting any contract for the "erection, building, equipment or maintenance of the said high school, and from awarding or making any contract for the expenditure of any money for or in connection with said high school" —in short, praying to have the said high school "enjoined out of existence."

At the time of commencing the action notice was given the defendant high school board of the application for injunction, and a hearing was had before the judge in cham-

bers in the court below, upon the facts set out in the petition, and after a full consideration of the case the court ordered:

"That said application be denied except as hereinafter set forth, and does order that said defendants in this action be, and they are hereby enjoined, until the further order of this court,   *   *   *   from contracting any debt or liability, or issuing or paying any warrant or order, or expending any money, for or on account of a site for a county high school, or a building therefor, or any furniture, apparatus, materials, or supplies therefor, in any sum in excess of the sum of $40,000."

From this order of the court below, the cause comes to this court on petition in error, defendants also filing their petition in error.

Five grounds of reversal are relied upon by the plaintiff in error, viz:

1.   Insufficiency of the vote at the election.   2. The question voted upon is void for uncertainty.   3. The interest of a member of the board avoids its action.   4. The title to the site not acquired, and selection void.   5. The proposed indebtedness exceeds the federal limitation.

These contentions we will discuss in their order.

Insufficiency of the vote at the election:   It is admitted that the proposition to establish a high school was submitted by the order of the board of county commissioners, to the voters of Logan county at the general election held on November 4, 1902, and that at said election 4,958 votes were cast for représentative in congress, and that upon the high school proposition but 2,584 were cast, of which 1,533 were in favor and 1,051 were against such proposition, and the conclusion is therefore drawn that the proposition was defeated by the voice of the electors of said county.

39—Vol 13

This contention is based upon the theory and claim that the law under which the election was held requires a majority of all the votes cast at the election at which it is submitted. We do not think this either a reasonable or fair reading of the statute, the language of which is: "the votes on said question shall be canvassed,    *    *    *    and if a majority of all the votes cast shall be in favor of," etc. It will be observed that the act does not say a "majority of all the votes cast at such election;" neither does it say a majority of all the voters voting at such election; nor does it say a majority of the voters or electors of said county; nor has it any words of similar import.

If this distinction of language is kept in view we think it will dispose of nearly all conflict in the cases cited by counsel upon the one side and the other of this case.

Many cases are cited by the counsel for plaintiff in error, among them being the county seat of Linn county, 15th Kans. 500, on which counsel seem to place considerable reliance, and we have therefore endeavored to analyze that case, as it is made the foundation on which the other Kansas cases are made to rest. In that case the state constitution provided: "No county seat shall be changed without the consent of a majority of the electors of the county;" and Justice Brewer in passing upon this provision of the constitution uses the following language:

"It seems to us therefore that where the legislature has provided an election as the means of ascertaining the wishes of the electors of a county, and has made no provision for a registration, and designated no other list or roll as the evidence of the number of the electors, it may, under the constitutional provision quoted, declare that the place receiv-

ing a majority of the votes cast shall be the county seat. As these county seat elections cannot be held on the days of general elections, these considerations do not apply to cases where two or more questions are submitted at the same election, and more votes are cast upon one question than upon another; for there the highest number of votes cast upon any one question is clear evidence of the number of voters, which may not in view of any such constitutional restriction   *   *   * be disregarded in any contest arising as to the decision of the other questions."

Unquestionably Justice Brewer was right. The real question presented in that case was, what shall be evidence of the number of "electors of the county?" and the decision determines only that the election itself furnishes the evidence, and the only evidence, of the number of electors in such county; and that this would be equally true whether it was a general or special election. It is the "number of electors," and not "a majority of the votes," which was to be determined in that case.

*People v. Berkley,* 102 Cal., is cited. In that case the law reads:

"If, upon such canvass, a majority of all the electors voting at such election," etc.

In *People v. Wyant,* 48 Ill., the constitution required, "a majority of the voters," to be necessary to move the county seat.

*State v. Swift,* 69 Ill., a constitutional amendment was submitted to be in effect "if a majority of said electors shall ratify the same."

*Belknap v. City of Louisville,* 36 S. W., the law involved read:

"No county   *   *   may become indebted, etc., without the assent of two-thirds of the voters voting at an election held for that purpose."

*Stebbins v. Judge,* 108 Mich., is also relied upon, apparently with much confidence, by plaintiff in error. In that case the law required that the "qualified electors of the city *   *   *   shall authorize the issuing of bonds by a majority of their votes cast at any regular or special election called for that purpose."

In *Bayard v. Cling,* 16 Minn., an act of the legislature providing for the removal of the county seat by a majority of the electors voting on that question, was held to be in violation of a constitutional provision requiring a majority of the electors to concur.

Without further reference to the cases cited by counsel for the plaintiff in error, it is sufficient for us now to say that we have carefully examined nearly all of them, and find no reason to differ from them in any case, unless it might be in the case of *State v. Anderson,* 26 Neb., where the language of the statute is not quoted. With the later case of *National Bank v. Saunders,* 51 Neb., where the law required "a majority of the electors voting at an election to adopt an amendment to the constitution," we are in full accord.

Wherever the law, whether a constitutional provision or a legislative enactment, requires a majority of the "electors," or of the "voters," or of "persons voting at such election," it is universally held so far as we know that the election itself furnishes the only evidence of the number of such electors or voters, and a majority of all of them thus ascertained, is necessary to determine the election.

But where the language of the act is "a majority of the votes cast," or "a majority of all the votes cast," there it has just as universally been held to mean "a majority of the votes cast upon the question submitted," and that whether the votes are cast at a general or special election.

This, it seems to us, is the only reasonable, natural or intelligent construction that can be placed upon the varying language of legislative enactments.

To which of these classes of legislation the act in question in this case belongs, it is not difficult to determine. The act reads:

"Section 3. Said election shall be held in the same manner as are elections for county officers; and the votes on said question shall be canvassed, and if a majority of all the votes cast," etc.

What would be the use or significance of canvassing the votes on said questions, if no conclusion was to be reached when the canvassing was done?

As to the question thus submitted the language of the act is clearly a limitation upon the powers of the election board. They are to "canvass the votes on said questions," and none other in order to ascertain whether the proposition to establish a high school has been sanctioned by the people of the county, and since the act provides for its submission at "any general or special election," the limitation is applied as to their act in the one case the same as the other.

Beyond this the general rule that "a majority of all the votes cast," means all the votes cast on this question, would be conclusive and determinate on this point.

In the case of *State v. Echols,* 41 Kan. 20, Pac. 523, the supreme court of Kansas had before it a proposition identi-

cal with the question here involved, arising upon the construction to be given a statute of that state, the language of which is identical with our statute; in fact, as stated, a statute from which the one under consideration is borrowed; and the court there hold that the statutory language, "and if a majority of all the votes cast shall be in favor of establishing such high school," means a majority of the votes cast upon that proposition, as distinguished from "all the votes cast at that election."

This statute coming to us as a borrowed statute with a construction given to it by the courts of the state from which it is borrowed, is presumed here to mean what it was there held to mean.

Second. The second proposition contended for by plaintiff in error, is that the question voted on was void for uncertainty. The order made and notice of election given by the board of county commissioners submits the question of establishing the high school "in or near the city of Guthrie," and this designation of the place for locating said school is claimed to be so indefinite and uncertain as to render the whole proceedings void.

The statute uses the phrase, "at the place specified," and the contention is that "in or near the city of Guthrie" is not "at the place specified," because "in or near to" is not the designation of any place. There may be cases in which this would be true, but we do not think this is one of them. Sec. 8 of the act of 1901, under which this election was held, provides:

"The board of trustees shall proceed as soon as practicable to select at the place determined by the vote of the

county, the best site that can be obtained without expense to the county."

At its session of 1903 the legislature amended sec. 8 to read as follows:

"Section 8. The board of trustees shall proceed as soon as practicable to select the best site that in their judgment can be obtained for the location of said school, without expense to the county."

This act was approved and took effect March 17, 1903.

The record does not disclose at what time the board of trustees took any action looking to the acquisition of a site for the high school; nor do we think it very material whether they were acting under the original or the amended act, for while the amended section leaves out the clause, "at the place determined by the vote of the county," manifestly both acts were intended to vest a wide discretion in the board of trustees, as to such site, since they are required to obtain such site "without expense to the county."

This would seem to dispose of the contention that the notice and vote of the people must designate a definite place for the erection of the school building.

A definite or certain place could not be designated without naming the lots and block, or otherwise delineating the premises upon which the building was to stand, and this the law certainly did not contemplate or intend.

The law contemplated the submission of two questions to the people of the several counties in Oklahoma, viz: First, whether they desired a high school in that county, and second, at what place it should be located, and they were at liberty to designate the place of its location within just such

degree of certainty as would be consistent with the other provisions of the act, and this we think they have done, for it may well be that "in or near to the city of Guthrie" is as circumscribed and definite a location as would be consistent with the other provisions of the law.

It seems to be admitted in the argument on the part of plaintiff in error that if the petition presented to the county commissioners, and the order and notice of the election, had designated "in the city of Guthrie," then it would have been sufficiently certain, but it will readily be seen that whether it would have then been any more geographically certain than it is now, would depend entirely upon the size of the city.

"In or near to" a city embracing 100 acres would probably be just as certain a location as in a city embracing 1,000 acres. But in addition to this reflection, the law must be interpreted as a whole, and the court is not permitted to lose sight of the 8th section, which requires a site for the school to be obtained "free of charge to the county," and this might become extremely doubtful if the suitable location must be found within the city limits. It is also to be observed that these institutions of higher education are not commonly located in the corporate limits of a city, and it is at least questionable whether a wise public policy would not require them to be located outside of the pale of city influences and city environment. We cannot think that a metaphysical distinction between the significance of the words "at" and "in" could have been in the minds of the legislators in the enactment of this law, and we are not disposed to place the decision in this case upon so narrow a basis, since it is inevitable that all written language is dependent for its signifi-

cance upon the connection or grouping of the words to express the meaning intended.

We are therefore of the opinion that in using the expression "at a place in said petition named," the legislature purposely made use of so indefinite an expression in order to leave a wide discretion in the high school board as to the final location of the building. And we. also hold that the phrase "in or near the city of Guthrie," contained in the petition, order, and notice of election, is as definite and certain a location for said school as the law contemplates, until the high school board shall determine an exact location for the same, which since the holding of said election the said board has done, and have selected a location upon an addition to the city of Guthrie, which is a substantial compliance with the proposition submitted to the voters, and therefore within the meaning of the language of the act, to-wit: "At the place specified."

Third. The third proposition contended for by plaintiff in error is that the interest of a member of the board avoids its action.

It is alleged in the petition in this case that the site selected by the board of trustees of the high school is a block of ground in Havighorst's addition to the city of Guthrie, and that Havighorst was a member of the school board at the time the site was selected and conveyed to the county, and for this reason such selection by the board is void.

There is no allegation of any fraud or undue influence on the part of Havighorst, or that the site selected is not a proper and suitable one for the purpose, or that Havighorst exercised any influence in its selection, or that he took any

part in the selection of such site other than to make a voluntary donation and conveyance of the same to the county. From the allegation that Havighorst "is interested in the action of the board by reason of the consequent increase in the value of the adjacent property," it is inferred that "his influence may have determined the action of the whole board."

We think this conclusion too far-fetched to justify a court in applying to this transaction the doctrine of fraud, which is the underlying principle upon which is rested all the decisions setting aside the acts of agents or trustees.

Public policy undoubtedly forbids that a trustee shall be permitted, as such, to deal with himself as an individual. He may not receive or retain any profits arising from any such transactions, nor will the courts aid him in enforcing a contract against the trust to his individual benefit. Neither can he enforce the performance of an unexecuted contract, against his *cestui que* trust, in which he is personally beneficially interested. But the law does not prohibit him from making a donation to his *cestui que* trust; and the mere fact that in this instance he owns adjoining property, which may be rendered more or less valuable by reason of the location of the high school building in its near vicinity, cannot be received by the courts as a badge of fraud in the transaction, because the results to follow are purely speculative and hypothetical.

It is an injurious effect upon the trust reposed in the trustee which the law prohibits, and not a mere possible benefit to himself, where no cost or expense is incurred, and the *cestui que* trust has simply been benefited and enriched to the extent of the donation. In this case no injury is shown

or claimed to the county, and we do not see how it can be heard to complain. Courts of equity will not interfere where no injury is claimed or threatened to the complainant.

Fourth. "Title." It is alleged in the petition in this case that one Hartwell has or claims to have some right or interest in the quarter section of which the block selected by the trustees constitutes a part, and that his rights therein have been litigated through the various officers of the land department of the government, and later through the district and supreme courts of this territory, and that in all of these proceedings the holdings and the judgments have been constantly against any right or interest of Hartwell in the said premises, or any part thereof; and it is further alleged that an appeal in said cause has been taken from the supreme court of this territory to the supreme court of the United States, where the same is now pending and undetermined; and from this state of facts it is contended the title has not vested in the county.

It is a sufficient answer to this contention that this court has investigated Hartwell's claim of rights in the premises, and has found and determined that he had no right therein. This concludes the investigation of this subject-matter, so far as this court is concerned. Having once determined this question, we cannot now go into the realm of speculation with the attorneys for the plaintiff in error, as to what may be the possible effects upon the title of Havighorst, if it should finally transpire that this court has committed an error in the decision already rendered.

It may be conceded as argued on behalf of plaintiff in error that the statute contemplates a good title, and having

heretofore determined that the title is good, that contemplation of the statute is satisfied so far as this court is- able to determine, and we are bound by it.

Fifth. Does the proposed indebtedness exceed the. federal limitation? This last is, as we think, by far the most serious question in the case. The act of congress referred to reads as follows:

"That no municipal or political corporation, county, or other sub-division in any of the territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum on the value of the taxable property within such corporation, county, or sub-division, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness."

It is contended on the part of the defendant and cross-petitioner in error, that the above provisions of the federal statute do not apply to the facts and circumstances in this case alleged, and two reasons are assigned therefor.

"1. Because the act of the territorial legislature providing for the establishment of county high schools created a separate municipal corporation, distinct and independent from that of the county, and that the high school corporation is a separate and distinct entity, and is not limited in its powers to incur indebtedness by any indebtedness existing against Logan county;" and

"2. That the contracts which the school board are authorized to enter into, and for which they are authorized to issue warrants, are payable in annual installments, and their payment is provided for by a special tax levy each year for that purpose. And the special warrants issued are a lien upon the tax fund created for their payment and are not an indebtedness against the municipality."

If this contention can be upheld then manifestly a way has been discovered by which the plain provisions of the federal act may be evaded and annulled, and the territory and its counties and municipalities be permitted to create any measure of indebtedness the people may desire to incur.

The federal provision in reference to the measure of indebtedness which may be created or incurred by the several counties of the territory is in the nature of a constitutional provision, and could hardly be made more definite or comprehensive in its terms; and if they do not inhibit the county from incurring an indebtedness in excess of four per cent. in the present instance, then it is only necessary to change the name of the machinery in order to extend the debt-creating power to whatever limit desired. Sec. 5 of the high school act provides that the trustees "shall make an estimate of the amount of funds needed for building purposes, for payment of teachers' wages, and for payment of contingent expenses, and shall present to the board of county commissioners an estimate of the rate of tax required to raise the desired amount," etc.

Sec. 6. "Said tax shall be levied and collected in the same manner as other county taxes."

From these provisions it is manifest the tax is to be levied by the county officials, and that it is also a county tax; otherwise, the word "other" in sec. 6 can be given no significance. This being so it necessarily follows that a debt which is to be provided for and paid by a county tax, is a county debt, and that it is to be paid in annual installments does not take from it its character as a county indebtedness. The institutions which are to be created under the provisions of

this act of the legislature are for the use and benefit of all the people of the county, and are properly designated as county high schools. Nor does the fact that the evidences of the debt are denominated warrants, and are issued by the board of high school trustees, instead of the board of county commissioners, change the character of the indebtedness. The tax to be levied for the creation and maintenance of these high schools is to run against all the taxpayers and all the property in the county, and if, as contended, the high school trustees are a body corporate, an entity in and of themselves, separate and distinct from the county, clothed with power and authority to create an indebtedness against all the property of the county up to the federal limitation of four per cent., then it results that we have two entities at the same time exercising power and jurisdiction over the same territorial limits, and possessed of the same taxing powers upon the same property, and the people and property of the county will thus become indebted for county debts to the extent of eight per cent. instead of four per cent., as provided by the act of congress. This is surely not the law. (See *Porter et al. v. Commissioners of Kingfisher Co. et al.,* 6 Ok., p. 555, and authorities there cited.)

When the high school trustees have acted and erected the building and issued their warrants therefor, there would be a present existing indebtedness against the county thus created, and the fact that it is to be paid in annual installments neither changes its character nor lessens the objection to it. (*Walla Walla v. Walla Walla Water Co.,* 172 U. S.; *Territory of Oklahoma ex rel Woods v. City of Oklahoma,* 2 Ok., p. 158.)

There remains only the question whether the indebtedness threatened to oe incurred, when added to the now existing indebtedness of the county would increase the total beyond the four per cent. limitation. It is conceded that the assessed valuation of taxable property in Logan county for the year 1903 is $4,911,079, four per cent. of which would be $196,-443.16.

It is further admitted that the present net indebtedness of the county, less cash on hand, is $155,964.00. This taken from the total indebtedness which might lawfully be created leaves a margin of only $40,478.

It is to be observed that a wide distinction is here drawn between a present existing indebtedness and a contracted indebtedness hereafter to be created, dependent upon the performance of the contract by one of the parties thereto. Such is the Walla Walla Water Works case, *supra,* and all cases of similar character.

The people of Logan county have authorized the creation of a high school, and designated the place at which it shall be located. What amount of means shall be employed or what measure of indebtedness incurred, the legislature has left to the sound discretion of the trustees when appointed, but the trustees are nevertheless governed and restrained, in the creation of indebtedness, by the federal limitation.

It follows that the order of the court below restraining the defendants (trustees of the high school) "from contracting or incurring any debt or liability for a high school building, or for furniture or apparatus of any kind or character therefor in any sum in excess of $40,000," must be and the same is in all things affirmed.

Finding no error in the record, the judgment of the court below is affirmed.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.