**BOARD OF ED. OF OKLAHOMA CITY et al. v. WOODWORTH et al.**

No. 13952—Opinion Filed March 13, 1923.

Rehearing Denied April 24, 1923.

(Syllabus.)

**1. Elections—"Ballot" and "Vote."**

"Ballot" and "vote," though sometimes used synonymously, are not synonymous; a "ballot" is the instrument by which a voter expresses his choice between candidates, or in respect to propositions, while his "vote" is the choice or election as expressed by his ballot.

**2. Same—"Vote."**

"Vote" is the formal expression of a will, preference, wish, or choice in regard to any measure proposed, in which the person voting has an interest in common with others, either in electing a person to fill a certain situation or office, or in passing laws, rules, regulations, etc.

**3. Schools and School Districts—Bond Election—Number of "Voters."**

In determining whether a bond issue has received the assent of the required number of voters, as required by section 26, art. 10, of the Constitution, which provides: "No county, city, town, township, school district * * * shall be allowed to become indebted * * * without the assent of three-fifths of the voters thereof, voting at an election to be held for that purpose," held, that no blank ballots, nor ballots marked both for and against the bond issue, nor ballots which were returned as mutilated because they were not voted either for or against the bond issue, but were cast for another proposition that was submitted at the same time on a separate ballot, nor the return of the officers which disclosed twelve more mutilated ballots than were found in the ballot boxes, can be counted in determining the aggregate number of voters thereof voting at an election to be held for that purpose, for the reason that none of said persons casting any of said ballots expressed

any will, preference, or choice in regard to the measure voted upon.

**4. Same.**

Where a bond issue was submitted as provided in section 26, art. 10, of the Constitution, to determine whether a school district should issue bonds for the purpose of purchasing sites and erecting buildings, and said proposition received the necessary assent of three-fifths of the voters thereof voting on said proposition, held, the proposition carried, although it may not have received the majority of all the votes cast upon other questions submitted at the same election.

**5. Statutes—Office of Proviso.**

The natural and appropriate office of a proviso in a statute is to restrain or qualify some preceding matter, and it should be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter.

**6. Same—Construction.**

When the context requires it, a proviso to a section of the statute may be considered tantamount to an independent enactment.

**7. Statutes—Reasonable Construction.**

Every statute should have a reasonable, sensible construction, in preference to one which renders it or a substantial part of it useless or deleterious.

**8. Same—Intent — Enactments Taken as a Whole.**

To ascertain the intent of the framers of a statute, all the various portions of the legislative enactments upon the particular subject, including subsequent enactments, should be construed together and give effect as a whole.

**9. Elections—Registration Law—Applicability to School Elections.**

Under and by virtue of chapter 24, Session Laws 1916, (section 6252, Comp. Laws 1921), the proviso to section 4, which provides: "And provided, further, that the provisions of this act shall not apply to any school district election," under the proper rules of construction heretofore announced, should be construed as an independent enactment. Held, further, the registration law does not apply to school district elections.

**10. Schools and School Districts — Building Bonds—Constitution and Statutes.**

Section 10, art. 10, of the Constitution provided a method for erecting public buildings by a direct tax, but said method is not exclusive, and sections 19, 20, and 21, art. 6, ch. 219, Session Laws 1913 (sections 10423, 10424, 10425, Comp. Laws 1921), are not in conflict therewith nor have any application thereto, but said sections relate to the issuing of bonds provided for in section 26, art. 10, of the Constitution to be used for the purpose of erecting school buildings.

**11. Same—Submission of Question—Matters Included.**

In submitting to the people of a school district the proposition whether bonds shall be issued in the sum of $1,900,000 for the purpose of purchasing additional sites for school buildings, and play grounds, the erection of ward school buildings, and junior high school buildings, etc., embraces a question for school improvements in said district and comprises a single propositon.

**12. Same—Construction — Doubtful Terms—"Play Grounds."**

Where a proposition is submitted to the voters of a school district to issue bonds for the purchase of additional sites for school buildings and play grounds, although the meaning of the term "play grounds" may be ambiguous, and subject to two constructions, one which makes the bond issue legal, and the other illegal, the court, unless fairly convinced to the contrary, will place that construction upon the bond issue which makes the proposition legal instead of a construction holding the same illegal.

**13. Same—"School Site."**

The term "school site," in its common acceptation, and as commonly understood, refers to a parcel of ground sufficient in size upon which to erect a school building, and a yard surrounding the same to be used as a play ground for the children while at school.

Error from District Court, Oklahoma County; Hal Johnson, Assigned Judge.

Action by George O. Woodworth and others against the Board of Education of Oklahoma City and the members thereof to enjoin the issuance of school bonds. Judgment for plaintiffs, and defendants bring error. Reversed.

H. C. Thurman and A. J. McMahan, for plaintiffs in error.

E. E. Blake, B. D. Shear, and Keaton, Wells & Johnston, for defendants in error.

McNEILL, J. This is an appeal from a judgment of the district court of Oklahoma county enjoining the Board of Education of Oklahoma City from issuing certain bonds, which question was submitted to the voters of the school district, and declared to have received the required number of votes. The trial court canvassed the ballots and returns, and the record discloses there were 5,636 votes cast in favor of the issuing of the bonds, 3,706 against the bonds, and the returns disclosed the following mutilated ballots; 26 ballots marked both for and against the bonds; 14 ballots not marked in any respect; four ballots marked in favor of the bonds with lead pencil and one ballot marked outside the square. Nine ballots

which had been spoiled and canceled and four ballots in the boxes were not ballots on the bond issue, but were ballots cast for an excessive tax levy, which question was voted upon at the same time the bond issue was being voted upon, and the returns of the election officials disclosed 12 mutilated ballots more than were found in the boxes. The trial court made a general finding for the plaintiffs in the case, and enjoined the issuance of the bonds. The questions presented on appeal involve each proposition of law and fact presented to the trial court.

The first question briefed is whether the bonds received the assent of a sufficient number of the voters as required under section 26, art. 10, of the Constitution, which provides:

"No county, city, town, township, school district * * * shall be allowed to become indebted * * * without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose."

It is conceded that the bonds received more than three-fifths of the votes that were counted for and against the bonds, but it is contended that if all the mutilated ballots be counted in determining the aggregate number of voters thereof voting, the bond issue did not receive the necessary three-fifths assent. The above portion of the section of our Constitution has never been construed by this court. Other states have statutes or Constitutions very similar, although the language used in many of the statutes and Constitutions has altogether a different meaning. There is an irreconcilable conflict in the opinions of the courts of the different states as to whether mutilated ballots shall be considered in determining the aggregate number of voters voting at an election held for that purpose.

The statutes and constitutional provisions of the various states are not identical, nor are the statutes or Constitutions of the same state identical regarding the submitting of various questions to the people. In some instances the provisions of the statute, refer to majority of ballots cast, others to the votes cast, and others to the number of voters thereof voting at an election held for that purpose. There are, however, several propositions that are necessary to consider in order to arrive at a proper conclusion.

In the case of Clary v. Hurst (Tex.) 138 S. W. 566, it is stated:

"'Ballot' and 'vote,' though sometimes used synonymously, are not synonymous, and a 'ballot' is the instrument by which a voter expresses his choice between candidates, or in respect to propositions; while his 'vote' is the choice or election as expressed by his ballot."

In the case of State v. Blaisdell (N. D.) 119 N. W. 360, the court stated as follows:

"A ballot, as distinguished from a 'vote,' in the legal sense, and in a general way, is the piece of paper upon which the voter expresses his choice."

The Century Dictionary defines "vote" as follows:

"'Vote' is the formal expression of a will, preference, wish, or choice in regard to any measure proposed, in which the person voting has an interest in common with others, either in electing a person to fill a certain situation or office, or in passing laws, rules, regulations, etc."

See, also, Warren v. Pim, 66 N. J. Eq. 353, 59 Atl. 773.

Another proposition is also stated as follows:

"A 'vote' is an expression of the choice of the voter for or against any measure, any law, or the election of any person to office. It is but the expression of the will of a voter; and, whether the formula to give expression to such will be a ballot or viva voce, the result is the same; either is a vote. Gillespie v. Palmer, 20 Wis. 544, 546; State v. Green, 37 Ohio St. 227, 230; People v. Pease, 27 N. Y. 45, 84 Am. Dec. 242; State v. Roper, 66 N. W. 539, 540, 47 Neb. 417; State v. Barden, 46 N. W. 899, 900, 77 Wis. 601, 10 L. R. A. 155."

The Supreme Court of Iowa in the case of Mills v. Hallgren, 124 N. W. 1077, stated as follows:

"The word 'voters,' as ordinarily used, has two meanings—persons who perform the act of voting, and persons who have the qualifications entitling them to vote. Its meaning depends on the connections in which it is used, and is not always equivalent to 'electors.'"

The general rule in construing a statute or Constitution is that the same must be construed to express the intent of the framers of the act, and the words are supposed to be used in their ordinary and common sense. If we apply the rule that the word "voters" is used to express the meaning: First, persons who are qualified and entitled to vote; second, persons who perform the act of voting; third, and then apply the rule that a person voting is one who has expressed his wish or choice in regard to any measure proposed—and then apply that rule to the facts in the case at bar, we must conclude that the 14 ballots that were blank cannot be considered, because they expressed no choice or preference upon the measure for consideration.

This court in the case of Town of Eufaula v. Gibson, 22 Okla. 507, 98 Pac. 565, held that said blank ballot should not be considered in determining the aggregate number of votes. By applying the same rule, the 26 ballots that were marked both for and against the proposition cannot be considered. While those persons cast ballots, they expressed no preference or desire upon the question under consideration, and the ballots cast amounted to nothing more than a blank ballot. The four ballots that were cast for the excess levy, and not for the bond issue, and were returned as mutilated ballots, cannot be considered for the same reason.

The return disclosed 12 more mutilated ballots than were found in the boxes. The return regarding these ballots cannot be included for the same reason. It is therefore our opinion that neither the 14 blank ballots, nor the 26 ballots that were marked for and against the proposition, nor the four ballots that were returned as mutilated ballots, which were not cast on the bond issue, but were cast for the excess levy, nor the return which disclosed 12 more mutilated ballots that were found in the boxes, can be considered in determining the aggregate number of voters voting at the election to be held for that purpose. When these ballots and return are not considered in determining the aggregate number, the bonds received more than the assent of three-fifths, and it is unnecessary to consider whether the other mutilated ballots should be counted, for they would not change the result.

This court in the case of Town of Eufaula v. Gibson, supra, held that intelligible as well as unintelligible votes should be considered in determining the aggregate number of votes cast. It does not appear that there were any ballots marked both for and against the proposition, nor ballots voted on another proposition, nor a return which disclosed more mutilated ballots than were in the boxes, and those questions were not before the court for consideration. The constitutional provision under consideration in that case is somewhat different, as it provides "majority of votes cast." In the case at bar, under the constitutional provisions, to hold otherwise would be to hold that blank ballots and those voted both for and against the proposition would have to be counted as voting no. If the framers of the Constitution had such an intention, it would no doubt express such an intent in plain terms. A case where the statute is identical with the constitutional provisions under consideration, that supports the theory above announced, is State ex rel. Short et al. v. Clausen (Wash.) 130 Pac. 479. This case considers and distinguishes various statutory or constitutional provisions under consideration in the various cases.

The next question briefed:

"Whether or not the total number of voters 'voting at an election, to be held for that purpose,' shall be determined by the vote cast on the bond issue, or the vote cast on the question of an excess levy."

The election for determining whether an excess levy should be made was called at the same time and held at the same place as the election for the bonds. The bond election, under section 26, art. 10, of the Constitution, and article 6, ch. 219, Session Laws 1913, is called by the mayor and held by the officers appointed or designated by him, and the returns are convassed by the board of education. The election for an increased levy is authorized by article 10, sec. 9, of the Constitution, and chapter 192, Session Laws 1915, as amended by Senate Bill No. 149, Session Laws 1917, and is called by the board of education and held by officers designated by said board. The mayor and board appointed the same officers to conduct both elections and separate ballots were used and deposited in different boxes.

The decisions of the appellate courts of the various states where the identical question was involved, and wherein they have construed similar statutory or constitutional provisions, are very much in conflict. The territorial court of Oklahoma had under consideration a somewhat similar statutory provision in the case of Territory ex rel. McGuire, County Attorney, v. Board of Trustees for High School of Logan County, 13 Okla. 605, 76 Pac. 165, and the court in the first paragraph of the syllabus stated as follows:

"Where an election is legally called and held under article 1, c. 28, p. 187, of the Laws of 1901, to determine whether a county high school shall be established and at which a majority of the votes cast upon the proposition are in favor of the same, the proposition will be adopted, although it may not have received a majority of all the votes cast upon other questions submitted at the same election."

A few of the cases announcing this same principle are as follows: Fox v. City of Seattle (Wash.) 86 Pac. 379; Howland v. Board of Supervisors, 109 Cal. 152, 41 Pac. 864; Morgan v. City of Los Angeles (Cal.) 187 Pac. 1050; State ex rel. Kansas City v

Orear (Mo.) 210 S. W. 392; Franklin v. School District, 271 Mo. 593, 197 S. W. 346; Montgomery County Fiscal Court v. Thimble, 104 Ky. 629, 47 S. W. 773; Board of Education v. City of Winchester, 120 Ky. 591, 87 S. W. 768; City of Marion v. Haynes, 157 Ky. 687, 164 S. W. 79; Fowler v. City of Oakdale, 158 Ky. 603, 166 S. W. 195; Tinkle v. Griffin (Mont.) 68 Pac. 859; Armour Bros. Banking Co. v. Finney, Co. Com'r, 41 Fed. 322; Marion Co. v. Winkley, 29 Kan. 36; Wilson v. Wasco Co. (Ore.) 163 Pac. 317; and Carroll Co. v. Smith, 111 U. S. 556, 28 L. Ed. 517. As heretofore stated, the authorities are in conflict, and in view of the fact that the territorial court has followed the line of authorities adopting the rule heretofore stated, we see no reason why the same should not be applied to the case at bar, and in view of the wording of the Constitution, which provides, "three-fifths of the voters thereof voting at the election to be held for that purpose."

It is next contended that numerous parties voted who were not registered, and it is admitted there was a sufficient number voted who were not registered to have changed the result of the election. There was no contention that any of the voters were illegal voters, unless it was by reason of the fact that they were not registered. This question involves the construction of chapter 24, Session Laws 1916 (article 8, ch. 41, Comp. Laws 1921), and especially the proviso to section 4 of said act, being section 6252, Comp. Laws 1921, which is as follows:

"And provided further, that the provisions of this act shall not apply to any school district elections."

Section 1 of the act provides that the word "election" referred to in the act shall include school district elections. The act as a whole provides a general scheme for registration and machinery therefore, and no one shall be entitled to vote unless registered.

Section 9 provides for registration of newly qualified electors, and makes provision for furnishing a list of all registered voters to the board of education of any city or trustees of any school district. The section then provides:

"The provisions of this act shall not apply to school district meetings and elections to be held in the year 1916."

These two provisions are in conflict: one proviso providing that the act shall not apply to school district elections in 1916, and

the other proviso providing it shall not apply to any school district election. It is admitted that under and by virtue of this act voters voting at a school district election must be registered unless the proviso to section 4 may be considered tantamount to an independent enactment and to exempt the registration law being applicable to school district elections. If the proviso to section 4 is held to restrain or qualify what precedes, it has no force and effect, and is useless, because there is nothing for it to restrain or qualify. The natural and proper office of a proviso is to restrain or qualify some preceding matter, and will ordinarily be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter; or if the context requires, the proviso may be considered tantamount to an independent enactment. See Hudson v. Hopkins, 75 Okla. 260, 183 Pac. 507, and cases therein cited.

There is another provision of law which is stated as follows:

"Every statute should have a reasonable, sensible construction, in preference to one which renders it, or a substantial part of it, useless or deleterious." Harris v. Bell, 250 Fed. 209.

There is another provision of law which provides as follows:

"To ascertain the intent (of the statute) all the various portions of the legislative enactments upon the particular subject, including subsequent enactments, should be construed together and given effect as a whole." See Hudson v. Hopkins, supra.

If we refer to the law in force and effect prior to the enactment of the registration law, we find that at the time of the enactment of the registration law women were not qualified electors within the state, except as provided by section 3, art. 3, of the Constitution, which provides as follows:

"Until otherwise provided by law, all female citizens of this state, possessing like qualifications of male electors, shall be qualified to vote at school district elections or meetings."

There were also certain statutes that authorized women to vote at school district elections. What is now section 10425, Comp. Laws 1921, was in force and effect, and provided that on questions of issuance of school bonds in independent districts no person should be qualified to vote unless he was a qualified elector. This court in the case of Shelton v. Board, 43 Okla. 239, 142 Pac. 1034, held that women were not elec-

tors within the meaning of the statute and not qualified to vote at such an election. What is now section 10431, Comp. Laws 1921, was also in force and effect, and provided, in substance, that women were entitled to vote at certain elections in independent school district elections. This court in the case of Lowe v. Consolidated School District 97, Blaine County, 79 Okla. 115, 191 Pac. 737, held that women were entitled to vote on issuance of bonds in consolidated school districts. When the registration law was considered by the legislative bodies, women were entitled to vote at certain school elections. If we look to the Journal of the Senate and House, we will find the act first passed both houses without the proviso to section 4 being incorporated in the act, and applied to school elections, except for the year 1916. The act was then reconsidered and amended, and among the amendments was the proviso which provided that the provisions of the act should not apply to any school district elections. If we apply the rule heretofore announced, that we must give force and effect if possible to each and every provision of the law, and further ascertain the intent of the legislative body, there can be but one conclusion reached, to wit: The Legislative realizing that no provision had been made in the act for registering women, who were not qualified to vote in general elections, but were qualified to vote at certain school district elections, it would have been necessary, if women were to be permitted to continue to have the right to vote at school elections, to amend the registration law to permit the women to register, or to enact the proviso that the same should not apply to school elections. The legislative body enacted the proviso, and it is very evident they intended this proviso to be an independent enactment, and the registration law was not to apply to school district elections.

It was next contended by the defendants in error that sections 19, 20 and 21, art. 6 ch. 219, Session Laws 1913, in so far as they provide for the issuance of bonds to erect school buildings, are unconstitutional, because a school building is a public building and can only be erected by the levy of a direct tax for that purpose as provided by section 10, art. 10, of the Constitution, or legislative enactments thereunder. Of course, if section 10, art. 10, of the Constitution is applicable, what we have said regarding the bonds carrying by assent of three-fifths of the voters is not applicable, for the reason section 10, art. 10 of the Constitution provides that taxes may be increased for the purpose of erecting school buildings by a majority of the qualified voters voting at said election.

We do not think section 10, art. 10 of the Constitution has any application to the issuing of bonds, but said section only applies when a public building is attempted to be built by the levy of a direct tax which is authorized by the section, and it provides for increasing taxes not to exceed five mills on the dollar of all taxable property in the district for the purpose of building a public institution, if authorized by a majority vote, at an election held for that purpose. Defendants in error contend this method is exclusive and the only manner in which to raise funds to erect public buildings. With this we cannot agree. While this court has never passed directly upon that question, this court has upheld bond issues for the purpose of erecting school buildings in the following cases: Williams et al. v. School District, 55 Okla. 356, 155 Pac. 515; Mason et al. v. School District No. 72, Blaine Co., 66 Okla. 239, 168 Pac. 798; Lowe v. Consolidated School District, 79 Okla. 115, 191 Pac. 737.

Section 9, art. 10 of the Constitution limits the tax levy that may be assessed on an ad valorem basis for city, county, township, or town or school districts. Section 10 of article 10, however, provides how this tax limit may be increased to erect public buildings in county, city, or school district, and provides the method.

Section 26, art. 10, relates to the limitation upon contracting of debts, and reads as follows:

"No county * * * school district * * * shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without assent of three-fifths of the voters thereof."

Following this section is section 27, which refers to public utilities. Section 28 then provides:

"Counties * * * school districts * * * shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payment of such parts of the judgments as such municipality may, by law, be required to pay."

Section 29 refers to bonds and bond certificates.

It is very evident that the framers of the Constitution in section 10, art. 10 of the Constitution authorized municipal corporations mentioned therein to erect buildings where the same might be erected by an increased tax levy not exceeding five mills levy on the assessed valuation of the property of the municipality when authorized by a majority votes of those voting at an election held for that purpose. Section 26 refers to bond issues, and provides the manner and method of voting said bonds, and requires the same shall not be voted without the assent of three-fifths of the voters, and provides also for collection of an annual tax to pay interest and create a sinking fund. The subsequent sections 28 and 29 make further provisions for payments of said bonds and approval of said bonds by the Attorney General.

We therefore conclude that section 10, art. 10, of the Constitution provides a method for increasing the rate of taxation for the purpose of building public buildings. That section 26 provides for creating indebtedness by voting bonds. and the proceeds may be used for erecting school buildings.

It was next contended by the defendants in error that the bonds must fail for the reason the proclamation calling the election submitted, first, two or more distinct propositions to be voted upon, as a single proposition, and the proclamation was not specific and distinct to apprise the voters of the full purpose of the bonds, and embraced an item for play grounds, which municipality under our law cannot issue bonds to purchase. The proclamation is in part as follows:

"Shall the board of education of Oklahoma City * * * issue its negotiable coupon bonds in the amount of $1,900,000 for the purpose of purchasing additional sites for school buildings and play grounds. the erection of ward school. buildings. a junior high school building. a senior high school building."

Section 10423, Comp. Laws 1921, authorizes the board of education to issue bonds to purchase school site or sites or to erect or purchase or equip school building or buildings, or both. Section 10424 provides that the mayor shall call the election, and name in the proclamation the amount of bonds to be voted on, and the purpose for which they are to be issued.

The defendants in error contend that the proclamation must be specific and must submit how much is to be expended for each site, how much for each school building,

and thus enable the voter to vote upon each item separate. Plaintiff in error, however, contends there was but a single proposition, which was clearly and definitely expressed, to wit: Whether or not the school district should become indebted in the amount for the purposes mentioned.

Counsel for plaintiff in error assert they have been unable to find a single case holding that a bond issue which authorized the purchase of several sites and authorized the construction of several buildings for the school district was invalid because it embraced two or more propositions as one. The Supreme Court of Missouri in the cases of State ex rel. School District v. Gordon, 122 S. W. 1008, and State v. Gordon, 133 S. W. 44, did approve such an election. The defendants in error rely upon cases which cite the general proposition that the proposition must be stated in such specific language as to apprise the voters of the nature of the proposition to be voted upon, and in addition cite the cases of State v. Gordon (Mo.) 188 S. W. 90; and Supervisor v. Railroad, 21 Ill. 338.

In the case of State v. Gordon, supra, the question submitted was to authorize the voting of bonds by a county to erect two court houses, one in the city of Bowling Green and one in the city of Louisiana. In the case of Supervisor v. Railroad, supra. the question submitted was to authorize bonds as a donation to build two separate and distinct railroads. While those cases in a general way support the theory of plaintiffs in error, yet we do not think they are applicable or should be applied to an independent school district in a city which maintains many separate and distinct school buildings, all under one management and control, all necessary for the education of the children of various parts thereof.

In the case of Coleman v. Eutaw, 157 Ala. 327, 47 South. 703, it is stated:

"Submission of a proposed bond issue to purchase water works and electric light plant is not objectionable as involving the submission of a double purpose: it being reasonable to presume that such purpose comprised but one scheme of municipal improvement."

In the case of City of Oakland v. Thompson, City Clerk, (Cal.) 91 Pac. 387, the third paragraph of the syllabus is as follows:

"St. 1901, p. 27, c. 32, authorizing cities to acquire land for parks, and providing a proposition to incur debt therefor shall be submitted to the voters. does not contemplate that each piece of land desired for a

park should be voted upon separately, where there is a single scheme of park improvement, including several parcels of land widely separated, to be converted into separate parks."

See. also, Kemp v. Hazelhurst, 80 Miss. 443, 31 South. 908; Linn v. Omaha, 76 Neb. 552, 107 N. W. 983; People ex rel. Mariposa Co. v. Counts, 89 Cal. 15, 26 Pac. 612; Louisville v. Park Com'rs, 112 Ky. 409, 65 S. W. 860; and Potter v. Lainhart, 44 Fla. 647, 33 South. 251. No case is cited where a school district voted bonds for building several buildings or the purchasing of several sites where the court held that such proposition was not definitely stated or that the same embraced more than one proposition.

The next proposition urged for the injunction was that the proclamation authorized expending the proceeds of the bonds to purchasing play grounds, and no authority exists for a school district to vote bonds to purchase play grounds. Chapter 35, Sess. Laws 1915, sec. 1, amended by House Bill 14, Session Laws 1917, being section 10437, Comp. Laws 1921, authorized the board of education to establish and maintain play grounds on the school grounds and other places and to levy a special assessment for the same. For the sake of this case, although not conceding, we will assume that independent districts of a city are unauthorized to issue bonds to establish and maintain play grounds separate and distinct from the school grounds. The ballot submitting this question to the people was worded as follows:

"For the purchase of additional sites for school buildings and play grounds."

The plaintiff in error contends the language used should be interpreted and construed to mean the board of education are authorized to purchase sites of sufficient size to erect buildings thereon and to contain the necessary grounds surrounding said buildings to accommodate the children. The defendants in error, however, contend the word "play grounds" authorizes the expending of the money for play grounds, and all the funds might be expended for that purpose. There is a general provision of law applicable to contracts, statutes, and Constitutions, to wit, that in construing the same and ascertaining the intent of the framers thereof, where the same are ambiguous and subject to two constructions, one legal and the other illegal, the court should place the construction upon the same which makes them legal. It is upon the supposition that it was intended to do only those things which were legal, instead of supposing it was intended to do an illegal act. We know of no reason why the same rule should not be applied to the proposition here under consideration.

School sites in this country embrace not only the grounds upon which the school house is located, but the grounds surrounding the building used as play grounds, and in referring to the term "school sites," the ordinary acceptation of the term means, not only the ground upon which the building is located, but the ground surrounding the building which is dedicated and used as a place of recreation for the children while attending school. It is within the knowledge of all that in conducting a school, and especially the smaller grades, the school recesses every day to permit the children to have some outdoor recreation, which is considered necessary, not only for the health and development of the child, but for his proper education. So we think it is fair to presume that the board of education, when submitting the proposition of additional sites for "school buildings and play grounds," meant sites for erection of buildings, and the necessary play grounds surrounding said buildings, and the people intended to authorize the purchase of that kind and character of sites which in the judgment of the board of education would be necessary to properly conduct a modern school.

Under the wording of the bond issue, we do not think the same is subject to the strained construction defendants in error attempted to place upon the same. While the language used might be construed to mean that the board of education was attempting to vote bonds for the purpose of establishing play grounds separate and distinct from the school grounds, we do not think that it should be given such construction, but that it refers to the playgrounds that were necessary to properly conduct a modern school. We do not think that any one would contend that the board of education in purchasing a school site would be limited to purchasing only sufficient grounds upon which to erect a building, the same as you would an office building.

We therefore conclude that the bond issue was not illegal for the reasons above stated. We think another reason why the injunction should not be granted is, the bonds are authorized for school site and buildings, and if the board of education attempted to use the bonds for an illegal purpose, then they might be enjoined. This

question is discussed in the case of Town of Afton v. Gill, 57 Okla. 36, 156 Pac. 658, and in the case of State of Kansas v. Clay Center, 91 Pac. 91.

For the reasons stated, the judgment of the trial court is reversed, and remanded, with instructions to dismiss plaintiffs' petition.

JOHNSON, V. C. J., and KANE, COCHRAN, and BRANSON, JJ., concur.