LOFTIS et al. v. SCHOOL DISTRICT NO. 52 OF BECKHAM COUNTY et al.

No. 19987. Opinion Filed July 8, 1930.

Rehearing Denied Sept. 9, 1930.

Commissioners' Opinion, Division No. 2.

T. R. Wise, for plaintiffs in error.

A. N. Murphy, for defendants in error.

HALL, C. This action was commenced by M. A. Loftis, H. T. Doss, and others, who were taxpayers in school district No. 52 of Beckham county, to enjoin the members of the school board of that school district from issuing certain bonds in the sum

of $19,000 which had been voted at an election held for that purpose. The grounds of complaint are: (1) That without the votes of a certain number of persons who were not registered, the bonds would have been defeated; that is, without the affirmative votes of these nonregistered persons, three-fifths of the votes would not have been cast for the bonds. (2) That the petition which was presented to the school board purporting to authorize the board to call an election for voting on the bonds did not contain the requisite number of signers, that is, one-third of the qualified electors in the school district as provided by law.

Pertaining to the first proposition, the one relating to the matter of persons voting without having first registered, plaintiffs concede that an express statute (section 6252, Comp. Stat. 1921) and a decision of this court (Board of Education v. Woodworth, 89 Okla. 192, 214 Pac. 1077) are against them. It is the contention of counsel that said section 6252 of the statutes is violative of section 6 of art. 3 of the Constitution, which section provides, among other things, that the Legislature

"* * * may, when necessary, provide by law for the registration of electors throughout the state or in any incorporated city or town thereof, and when it is so provided, no person shall vote at any election unless he shall have registered according to law."

It is the contention of counsel for plaintiffs in error that in the case of Board of Education v. Woodworth, supra, only an interpretation of the statute was considered, and not its constitutionality. Perhaps that contention is correct; but it will be observed from the plain language of the section of the Constitution above quoted, the matter of providing for the registration of voters and the manner thereof is delegated to the Legislature. The Legislature first enacted a law requiring the registration of voters in cities. It later extended the law to towns and country precincts; that is, the Legislature enacted a uniform registration act in 1916. Under this constitutional provision, it is entirely within the power of the Legislature to require the registration of voters in cities and towns and not require such registration in the country districts. The Legislature may also and instead require that the voters in the country districts shall not vote without first having registered, and might exempt voters in the cities and towns from its operation. Likewise, there is no reason why that same power is not vested in the Legislature, when acting within a proper subject for legislation, to require the registration of persons as a prerequisite to the right to vote in elections for certain purposes and not require such registration as a prerequisite to the right to vote at certain other elections. In other words, the matter is one left to the discretion of the Legislature, which discretion will not be disturbed unless its acts are so arbitrary and capricious as to offend some other provision than section 6 of art. 3 of the Constitution or some provision of the Constitution of the United States.

We therefore hold that the trial court was correct in sustaining the objection to the evidence of the plaintiffs tending to show that persons other than registered voters voted at such school district bond election.

The next question, the one relating to the sufficiency of the petition, is not without complications. In this case, 95 persons purporting to be qualified electors, and which the court found to be qualified electors, signed the petition requesting that the school board call an election for the purpose of voting on the proposed bond issue. Fourteen months prior to that time, a former member of the school board, a Mr. Watson, had made an enumeration of the qualified electors in that school district. The number was 216. He transmitted that enumeration to the county assessor, who adopted the enumeration as his own. The plaintiffs introduced evidence tending to show a considerably larger number of voters in the school district than 216; that is, a sufficiently larger number to cause the sum of 95 to be less than one-third thereof.

The finding of the court on that issue was against the contention of plaintiffs. Furthermore, that testimony was incompetent to show the number of persons necessary to sign the petition. The statutes provide another method of ascertaining the number of qualified electors in the school district for the purpose of determining the sufficiency of the petition in respect to the number of signers thereof. The method provided by statute is not cumulative, but is exclusive.

In determining the question before us, we are confronted with the fact that our statutes governing this particular matter are exceedingly awkward and to some extend without meaning. Section 10283, Comp. Stat. 1921, is definite enough in stating that no election for the purpose of voting school district bonds shall be ordered unless a petition is filed and signed by at least one-third of the qualified electors in the school district. But the statute further expressly provides that the per centum of these "qualified electors" shall be determined as defined in said section of the statute. In this connection it

provides that the basis for determining the one-third of the qualified electors is the number "shown by the last preceding enumeration by the township trustee of the township in which such school district is located." Under the provisions of the law existing at that time, the township trustee was ex-officio the township assessor.

The language of this section of the statute readily suggests a provision in the law somewhere requiring the township trustee or some officer in lieu thereof to gather this statistical information for the use and benefit of the school district. Such provisions are found in section 9645, Comp. Stat. 1921, and provided, among other things, as follows:

"On or before the first Monday in May, annually, the several township * * * assessor (whose title is township trustee) shall make out and deliver to the county clerk an assessment roll consisting of * * * a list in alphabetical order of all persons and bodies corporate in whose names any property or anything taxable (other than the real estate) has been listed, and in what school and road district the owner thereof resides, or if the owner be a nonresident of the state, then the school and road district where the chattel property is located. * * *"

Much of the above section of the statute was repealed by the enactment of sections 9660-9662, Comp. Stat. 1921, creating the office of county assessor, and defining certain duties in connection therewith. The county assessor performs the same duties and the same functions as formerly performed by the township assessor. The county assessor must of necessity gather this statistical information and return it for the particular school district in which the taxpayer resides, in order to determine the rate of taxation on the taxpayer's personal property. This same article (art. 7, chap. 84 of the Statutes) provides that the county assessor (in addition to delivering the tax rolls to the county treasurer) shall deliver annually an abstract of the tax rolls to the county clerk.

The manner of issuing bonds of a school district or any other municipality, as well as the authority therefor, is derived from the Constitution and the statutes. It is within the power of the Legislature, acting within the limitations provided in the Constitution, to prescribe the procedure to be followed as a condition precedent to the the issuance of municipal bonds. In the case of school districts other than in cities and towns, the Legislature has provided as a condition precedent that a petition signed by at least one-third of the qualified voters of the school district must be filed with the school board. The number of persons necessary to sign the petition must be ascertained by the method expressly set forth in the statute, which method is to look to the latest tax rolls containing the enumeration. The writer fully realizes that the number of taxpayers is, as a rule, considerably less than the actual number of voters, and that it is much more favorable to the proponents of the issuance of bonds to use the taxpayers' records as a basis, rather than the actual enumeration which consists of men and women who are qualified electors, whether they are taxpayers or not taxpayers. But the Legislature has fixed that particular method as the standard or basis by which one-third of the voters may be determined, and its provisions are mandatory. There is no provision in the law, express or implied, authorizing an enumeration, as a basis for a bond election, to be made by a member or members of the school board. Therefore, the enumeration made by the ex-member of the school board, Mr. Watson, was insufficient as a basis for determining one-third of the number of qualified voters in the school district. Furthermore, the enumeration used in this case was made in 1926. The bonds were voted in 1928. The law clearly provides that this enumeration or assessment shall be made annually and filed with the county clerk. If an enumeration made in 1926 could be used as a basis for an election held in 1928, there would be no reason why an enumeration made as early as 1916 or 1912 could not be used as a basis for such election.

As we stated in a preceding paragraph, the statutes relating to the matter are exceedingly crude; and perhaps at some future time the defects will be cured by appropriate legislation. We understand that the Attorney General has been observing a rule of expediency and accepting in lieu of the provisions of the statutes an enumeration made by the members of the school board of the particular school district. That no doubt would be rational legislation, but it is beyond the province of the courts to write it into the law. Our province is only to expound the laws as they are made.

For the reasons herein stated, the judgment of the trial court is hereby reversed, with directions to grant the permanent injunction prayed for in this case.

BENNETT, HERR, EAGLETON, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.